# CASES DECIDED

## IN THE

# Supreme Court of Appeals

## OF VIRGINIA

### Wytheville.

## ALTAVISTA COTTON MILLS, INCORPORATED, v. H. L. LANE.

### June 15, 1922.

1. CONTRACTS—*Implied Contracts—Pleading—Instructions.*—In an action for services, it was urged against an instruction given for plaintiff that plaintiff did not sue upon an implied contract.

   *Held:* That defendant could not be heard to urge this objection, for the reason that an implied contract was put in issue by defendant's eighth ground of defense, and by an instruction given at its request, containing substantially the same proposition as that contained in the instruction objected to.

2. DAMAGES—*Instructions—Element of Damage Not Claimed by the Plaintiff—Repetition.*—Where the jury has been properly instructed as to the measure of damages, the defendant is not entitled to another instruction forbidding the jury to consider an element of damage not claimed by the plaintiff.

3. INSTRUCTIONS—*Modification—Harmless Error.*—An amendment made to an instruction offered by defendant did not constitute reversible error, where it contained practically the same proposition touching plaintiff's right to recover on an implied promise as that embodied in another instruction for defendant granted by the court.

4. MASTER AND SERVANT—*Action for Services—Instructions—Harmless Error.*—In an action for services rendered in financing a cotton mill corporation, if it were error to tell the jury that they could allow plaintiff for services which materially contributed to placing the mill on a sound financial basis, it was harmless error, as defendant admitted that the mill was subsequently gotten on a sound financial basis, and there was sufficient evidence to warrant the jury in finding that it was placed on a sound financial basis as a result of plaintiff's services.

5. MASTER AND SERVANT—*Action for Services—Fraudulent Concealment—Contract Between Plaintiff and Corporation for Services in Financing the Corporation.*—In an action for services rendered in financing a cotton mill corporation, defendant contended that plaintiff sug-

1

Syllabus.

gested that no record be made in the minutes of the directors of the agreement between himself and defendant company, with the intent to defraud prospective purchasers of stock. Plaintiff was neither a stockholder, director nor officer of the company, and had no control over what should be entered upon the minutes of the company.

*Held:* That there was no evidence of fraudulent intent, and that as plaintiff's compensation was contingent, there was no occasion to mention it in the financial statement of the company until it became a liability.

6. WITNESSES—*Presumption from Suppression of Evidence.*—Failure to call an available witness possessing peculiar knowledge concerning facts essential to a party's case, direct or rebutting, or to examine such witness as to the facts covered by his special knowledge, especially if the witness be favorable to the party's contention, relying instead upon the evidence of witnesses less familiar with the matter, gives rise to an inference sometimes denominated a "strong presumption of law" that the testimony of such uninterrogated witness would not sustain the contention of the party.

7. MASTER AND SERVANT—*Action for Services—Fraudulent Concealment—Contract Between Plaintiff and Corporation for Services in Financing the Corporation.*—In an action for services rendered in financing a cotton mill corporation, if, as charged, the plaintiff was responsible for the failure to enter his contract on the minutes of the directors, this in no way affected his right to recover, since there was no legal necessity for making such a record, and the law does not penalize a person for failing to do that which the law does not require to be done.

8. CORPORATIONS—*Necessity of Record of Directors' Meetings—Parol Evidence.*—While it is the duty of a corporation to keep a record of the meetings of its directors showing the date of the meeting and who were present, it is not essential to the validity or binding effect of acts done, or authority given by the board, that its votes or decisions be recorded, unless recordation is required by statute, charter or by-laws, and if no record is kept of the proceedings of the board of directors or trustees of a corporation, parol evidence is permissible to show what was resolved or done, and by what vote.

9. CORPORATIONS—*Contracts—Formal Requisites in Execution of Contracts.*—Since in the absence of charter or statutory limitations the only essential difference between the power of a corporation and of an individual to contract rests upon the fact that a corporation must act through its officers or agents, a corporation in the absence of statutory or charter provisions need observe only such formal requirements in the execution of its contracts as are binding on an individual under similar circumstances.

10. CORPORATIONS—*Contracts—Evidence to Establish.*—It is not necessary to show a formal execution of a contract by a corporation unless the statute requires it, where there is other competent evidence of the terms of the contract and of the assent of the parties to it.

11. CORPORATIONS—*Contracts—Assent of Corporation to Contract.*—It is necessary to show in some form the assent of the corporation to a contract, but in the absence of statutory requirement such assent need not be shown by a formal vote, nor by entry in the minutes of a directors' meeting; nor is it necessary that a contract shall be made a matter of record, unless a statute or its charter so provides.

12. CORPORATIONS—*Board of Directors—Form of Resolution—Parol Evidence of Action of Directors.*—As a general rule a vote or other action on the part of the board of directors need not be a formal resolution entered on the minutes or records of the corporation, unless it is expressly required, and when it is not a matter of record it may be proved by parol.

13. CORPORATIONS—*Contracts—Acceptance of Benefit of Contract—Waiver of Informalites.*—A corporation which has received the consideration of a contract cannot defend against an action on the contract on the ground that the provisions of the statute, charter or by-laws prescribing the form of the contract, or the mode of executing it, were not complied with by the officer acting for the corporation in the execution of the contract. In other words, any informality in executing a contract is waived and cannot be set up as a defense where the corporation has accepted and retained the benefits of the contract.

14. MASTER AND SERVANT—*Contract for Services—Public Policy—Case at Bar.*—Plaintiff, in the instant case, brought suit against the defendant to recover $40,000 for services rendered in financing defendant. It appeared from the evidence that plaintiff's contract with defendant was legal and binding, and not against public policy, and that he had faithfully executed the same.

   *Held:* That there was ample evidence to support a verdict of the jury for plaintiff for $25,000 damages.

15. APPEAL AND ERROR—*Costs—Plaintiff in Error Substantially Prevailing.*— As in the instant case, an action for services, defendant in error, plaintiff below, not being entitled to, and having in the appellate court relinquished his right to recover interest upon the damages awarded him, the plaintiff in error substantially prevailed in the matter of interest, and judgment was accordingly entered in its favor for the costs incurred in the appellate court.

Error to a judgment of the Circuit Court of Campbell county in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Affirmed in part and reversed in part.*

The opinion states the case.

*Volney E. Howard* and *Wilson & Manson*, for the plaintiff in error.

*Harrison & Long* and *Caskie & Caskie*, for the defendant in error.

WEST, J., delivered the opinion of the court.

H. L. Lane brought suit against the Altavista Cotton Mills, Incorporated, to recover $40,000.00 for services rendered in financing the corporation. The jury returned a verdict in favor of the plaintiff for $25,000 on which a judgment was entered in the Circuit Court of Campbell county for $25,000, with interest thereon from the 15th day of May, 1916, and costs. To that judgment a writ of error was awarded.

For convenience the parties will be designated as plaintiff and defendant with respect to their positions in the trial court.

In the summer of 1910, A. C. Hutchinson, a cotton mill man of Charlotte, N. C., came to Altavista, Va., and organized the Altavista Cotton Mills, Incorporated, with a capital stock of $300,000, divided into 1,500 shares each of common and preferrred stock, at $100 per share. Hutchinson was elected president and John E. Lane, a brother of the plaintiff, vice-president, although he was not a subscriber to stock in the company. Hutchinson subscribed $17,500, and entered into contracts with J. H. Mayes and Fred H. White, southern representatives of New England manufacturers of cotton mill machinery, for the purchase of such machinery, on condition that the manufacturers would accept one-third of the cost of the same in stock of the company. The Altavista Land and Improvement Company, of which the plaintiff was the largest

stockholder, donated a site for the proposed mill and subscribed for $50,000 of the stock of the defendant company; but the plaintiff did not subscribe in his own name for any stock in said company.

Hutchinson endeavored to sell the stock of the company and succeeded in inducing a few of his friends in North Carolina to subscribe for small amounts aggregating $5,000 to $6,000.    Plans were drawn and the construction of the buildings begun, but, due to a lack of funds, in December, 1910, was suspended.    Hutchinson spent the winter of 1910-1911 in an effort to sell the stock of the mill, and making a failure thus to finance the company became despondent and committed suicide in April, 1911.

A meeting of the subscribers was held on April 24, 1911, for a general discussion of the affairs of the company, John W. Hutchinson, a son of A. C. Hutchinson, deceased, representing his father's interest and the other Charlotte, N. C., subscribers; C. E. Hutchinson, brother of the deceased, and an experienced cotton mill man, was also present.    Failing in their effort at this conference to induce the plaintiff to undertake to finance the corporation, C. E. Hutchinson was offered a salary of $10,000 a year to accept the presidency and undertake to finance it.    This proposition was declined by Hutchinson.

The annual meeting of the stockholders was held May 10, 1911, at which all of the stock subscribed for was represented.    At this meeting the plaintiff, H. L. Lane, was unanimously urged to finance the company and act as president.    The stockholders present discussed with him the question of compensation for his services, should he undertake the work, and the sentiment of the meeting was that he should receive compensation on a basis of ten per cent on the capital-

ization of the company, or a reasonable annual salary. The plaintiff refused to undertake the burden of financing the company, or of acting as president. Before the meeting adjourned for dinner the following board of directors was elected: J. E. Lane, H. L. Lane, J. H. Mayes, Fred H. White, A. B. Percy, T. V. Elson and A. G. Bell, all of whom were present at the stockholders meeting, though neither one was personally a subscriber to the stock of the company.

After dinner, J. H. Mayes, John Hutchinson, J. E. Lane, H. L. Lane and F. H. White, who represented nearly all of the shares of the stock which had been subscribed for, met in a room at the hotel in Altavista, where the plaintiff was urged to reconsider his refusal, and the same proposition was made to him which had been made to C. E. Hutchinson. Plaintiff refused to accept this proposition but finally consented to undertake the financing of the company with the understanding and agreement that he was to have full charge of the finances of the company, and, if he were successful in financing it, the company should pay him "a reasonable sum for his services;" and with the further understanding, since he was to receive pay for his services, that he would not accept the presidency or serve as a director of the company, to which latter position he had that day been elected. This being one of the propositions submitted to him by the stockholders at their morning meeting, the matter was considered settled. Plaintiff thereupon announced that Lane Brothers & Company, a corporation owned principally by him, would subscribe for $10,000 of the stock and that his brother, J. E. Lane, would subscribe for a like amount.

At the close of the conference at the hotel, a directors' meeting was held, all the directors being present.

It was reported to this meeting that H. L. Lane had agreed to undertake to finance the defendant company and those who were present in the conference at the hotel went over, with the full board, what they had discussed and agreed upon in the conference. H. L. Lane resigned the position of director and R. L. Cummock was elected in his stead, and was also elected vice-president and general manager at an annual salary of $5,000. Cummock was invited into the meeting and stated he was a manufacturer but made no "profession of being a financier," and he was advised that the financing had been arranged and was in the hands of H. L. Lane.

The defendant relies upon six assignments of error, as follows: The action of the court—

1. In granting instruction No. 1 offered by the plaintiff;

2. In giving plaintiff's instruction No. 2 and refusing to give defendant's instruction No. 6;

3. In refusing to give defendant's instruction No. 4, as offered, and the giving of the instruction as amended;

4. In refusing to give instruction No. 1 offered by the defendant;

5. In refusing to set aside the verdict because it is contrary to the law and the evidence;

6. In entering judgment in favor of the plaintiff for the sum of $25,000, with interest thereon from May 15, 1916, though the verdict returned November 18, 1920, did not allow interest.

The following are the instructions offered by the plaintiff and given by the court:

"1. The court instructs the jury that if they believe from the evidence that the plaintiff had a contract as alleged, whether expressed or implied, with

the defendant company, to finance the said company, and that the plaintiff performed the said contract on his part, and the said company received and enjoyed the benefits thereof, he is entitled to recover.

"2.   The court instructs the jury that if you find for the plaintiff you shall assess his damages at such sum as you think his services are reasonably worth to the defendant company not exceeding the sum of $40,000.00."

The following are the instructions offered by the defendant:

"1.   The court instructs the jury that though they may believe from the evidence that the plaintiff had an agreement with some, or all, of the directors of the defendant company for compensation for his services, yet if they shall further believe from the evidence that by plaintiff's suggestion or direction no record was made of such agreement on the minutes of the board of directors, and that since May 10, 1911, when it is alleged such agreement was made, a number of the present holders of the stock of the defendant company have purchased their stock in ignorance of any claim of the plaintiff for compensation, then to enforce plaintiff's claim would operate a fraud upon such stockholders, and they must find a verdict for the defendant company.

"2.   The court instructs the jury that if they believe from the evidence that the plaintiff, in performing the services for the defendant company, for which he sues in this action, was prompted thereto by the motive of conserving his own individual interests growing out of his holdings of stock in Lane Brothers Company and in Altavista Land and Improvement Company, who, in turn, held stock in the defendant company; or if they shall believe from the evidence

that such services when rendered by interested parties, are customarily rendered without compensation, in the absence of an express contract for compensation, then the mere fact of his rendering said services was not sufficient to put the defendant company on notice that the acceptance of said service at his hands would imply an obligation on its part to pay for the same.

"3.    The court instructs the jury that the mere acceptance of service or accommodation by one at the hands of another does not necessarily imply an obligation on the latter to pay the former for the service. In order to imply such obligation, the service or accommodation must be of such a character and be rendered under such circumstances (in the absence of a specific contract) as to put the latter reasonably on notice that compensation would be required.    In other words, the nature of the service or accommodation and the circumstances under which the same is given must be such as to make the latter conscious, in reason, that an acceptance thereof would imply a promise to pay for the same.

"4.    The court instructs the jury that though they may believe from the evidence that the plaintiff entered into a valid contract or understanding with the defendant, by which it was agreed between them that any compensation he received for his services was to be contingent upon his succeeding in getting the mill on a sound financial basis, then, though they may believe from the evidence that the mill was subsequently gotten on a sound financial basis, yet unless they shall further believe from the evidence that the mill was placed on a sound financial basis as the result of the plaintiff's services, they must find for the defendant company.

"5.    The court instructs the jury that the burden

is upon the plaintiff to prove by a preponderance of the evidence that he had a contract, expressed or implied, with the defendant company; that he performed that contract, and is entitled to compensation under it, and unless the jury shall believe that the plaintiff has proven such a contract, and that he has performed it, and is entitled to compensation under it, by a preponderance of the evidence, they must find a verdict for the defendant company.

"6.   The court instructs the jury that any losses which may have been suffered by the plaintiff through his connection with the business or financial transactions of Lane Brothers Company, or with Altavista Land and Improvement Company, cannot be considered by them in arriving at their verdict in this case."

The court gave instructions Nos. 2, 3, and 5, offered by the defendant, but refused to give intructions Nos. 1 and 6, offered by the defendant, and refused to give No. 4 as offered, but amended the same so as to read as follows:

"The court instructs the jury that though they may believe from the evidence that the plaintiff entered into a valid contract or understanding with the defendant, by which it was agreed between them that any compensation he received for his services was to be contingent upon his succeeding in getting the mill on a sound financial basis, then, though they may believe from the evidence that the mill was subsequently gotten on a sound financial basis, yet, unless they shall further believe from the evidence that the mill was placed on a sound financial basis as the result of the plaintiff's services, they must find for the defendant company.   But if the jury shall believe from the evidence that the services of the plaintiff materially

contributed to the placing of the said cotton mill on a sound financial basis, then the jury may allow him therefor such sum as the evidence shows said services are reasonably worth, if they shall further believe that the said services so rendered were of such a nature and were rendered under such circumstances as to imply a promise on the part of the defendant to pay for the same."

[1] The objection urged against plaintiff's instruction No. 1 is that the plaintiff's evidence fails to show a valid contract with the defendant and that he did not sue upon an implied contract. For reasons which will appear herein, we are of opinion that the testimony shows a valid binding contract between the plaintiff and defendant. The defendant cannot be heard to urge his second objection to instruction No. 1, for the reason that the question of an implied contract was put in issue by its eighth ground of defense, and by its instruction No. 5, which the court gave at its request. Its instruction No. 5, and plaintiff's instruction No. 1, contain substantially the same proposition. No. 1 says, if the jury believe the plaintiff had a contract, whether expressed or implied, they must find for the plaintiff, under certain conditions, and No. 5 tells the jury that unless they believe the plaintiff has proven that he had a contract, expressed or implied, they must find for the defendant. The first assignment is without merit.

Defendant admits that plaintiff's instruction No. 2 is "probably correct" as "an abstract proposition of law," but contends that it should have been amended, or that its instruction No. 6 should have been given, since without it the jury returned an "excessive verdict." The question of any losses suffered by the plaintiff through his connection with the business or

financial transactions of Lane Brothers & Company, or with the Altavista Land and Improvement Company, was not in issue in this case, and the jury had been otherwise fully instructed as to the proper measure of damages.

[2]   This court held in *Nelson County* v. *Coleman,* 126 Va. 275, 101 S. E. 413, that the jury having been properly instructed as to the measure of damages, "the defendant was not entitled to another instruction forbidding the jury to consider an element of damage not claimed by the plaintiff." The second assignment is likewise without merit.

[3, 4]   The amendment which the court made to defendant's instruction No. 4 did not constitute reversible error, as it contained practically the same proposition touching plaintiff's right to recover on an implied promise, which was embodied in defendant's instruction No. 3, which was granted by the court. Besides, if it were error to tell the jury they could allow plaintiff for services which materially contributed to placing the mill on a sound financial basis, it was harmless, as the defendant admits that the mill was subsequently gotten on a sound financial basis, and there is sufficient evidence to warrant the jury in finding that it was placed on a sound financial basis as a result of plaintiff's services. The third assignment is also without merit.

As to the sixth assignment of error, the plaintiff confesses error and consents that the judgment be corrected by relinquishing interest on the principal sum found by the jury from May 15, 1916, to November 18, 1920, the date of the verdict.

The fourth assignment involves the question of fraud, and will be considered along with the fifth assignment of error.

[5]  The defendant contends that the plaintiff suggested that no record be made in the minutes of the directors of the agreement between himself and the defendant company; that this suggestion was made with intent to defraud prospective purchasers of stock; that the defendant company, in pursuance of said suggestion, made no entry of the agreement, and that the plaintiff's concealment of his contract was a fraud upon the creditors and stockholders of the company, and against public policy, and enabled the company to practice a fraud upon its creditors and such purchasers of stock, "by holding out to the public a smaller indebtedness than it had," if plaintiff's claim is valid; and that the plaintiff is estopped to assert his claim in this suit.

We find in the record no evidence of fraudulent intent on the part of the plaintiff or the company. Plaintiff's compensation was contingent and there was no occasion to mention it in the financial statement of the company until it became a liability.  The plaintiff was neither a stockholder, director nor officer of the company and had no control over what should be entered upon the minutes of the company, his suggestion being that "no statement be made" of the arrangement with him.

The defendant failed to put A. G. Bell, the secretary, whose duty it was to keep the minutes, on the stand as a witness, and thus withheld from the court and the jury facts within its knowledge.

[6]  Failure to call an available witness possessing peculiar knowledge concerning facts essential to a party's case, direct or rebutting, or to examine such witness as to the facts covered by his special knowledge, especially if the witness be favorable to the party's contention, relying instead upon the evidence of wit-

nesses less familiar with the matter, gives rise to an inference sometimes denominated a "strong presumption of law" that the testimony of such uninterrogated witness would not sustain the contention of the party. 16 Cyc., 1062.

It appears from the testimony of the witnesses introduced by the defendant to show that stockholders purchased stock in ignorance of the plaintiff's claim that those testifying purchased their stock on the open market from other stockholders, *after* the plaintiff had completed his contract *and demanded settlement* of the company.

[7]   If, as charged, the plaintiff was responsible for the failure to enter his contract on the minutes of the directors, this in no way affected his right to recover, since there was no legal necessity for making such a record, and the law does not penalize a person for failing to do that which the law does not require to be done.

[8]   While it is the duty of a corporation to keep a record of the meetings of its directors showing the date of the meeting and who were present, it is not essential to the validity or binding effect of acts done, or authority given by the board, that its votes or decisions be recorded, unless recordation is required by statute, charter or by-laws, and if no record is kept of the proceedings of the board of directors or trustees of a corporation, parol evidence is permissible to show what was resolved or done, and by what vote.   14-A Corpus Juris, p. 93.

[9-11]   Since in the absence of charter or statutory limitations the only essential difference between the power of a corporation and of an individual to contract rests upon the fact that a corporation must act through its officers or agents, a corporation in the absence of

statutory or charter provisions need observe only such formal requirements in the execution of its contracts as are binding on an individual under similar circumstances.   It is not necessary to show a formal execution of the contract unless the statute requires it, where there is other competent evidence of the terms of the contract and of the assent of the parties to it. It is necessary, however, to show in some form the assent of the corporation to the contract, but in the absence of statutory requirement such assent need not be shown by a formal vote, nor by entry in the minutes of a directors' meeting; nor is it necessary that a contract shall be made a matter of record, unless the statute or its charter so provides.   14-A Corpus Juris, p. 590.

[12]   As a general rule a vote or other action on the part of the board of directors need not be a formal resolution entered on the minutes or records of the corporation, unless it is expressly required, and when it is not a matter of record it may be proved by parol. Fletcher's Cyc. Corp., Vol. 4, pp. 440-52; *Handley* v. *Stutz,* 139 U. S. 417, 11 S. Ct. 530, 35 L. Ed. 227.

In the case of *Ten Eyck* v. *Pontiac, etc. R. Co.,* 74 Mich. 226, 41 N. W. 905, this is declared to be the law: "It is not necessary to the binding action of a board of directors that each member should take part in its deliberation.   The general rule is that a majority of the members of the board constitute a quorum for the transaction of business, and a majority of the quorum have power to bind the corporation by their vote. * * * Had the board of directors engaged any other person to perform the services rendered by the plaintiff, no question could have been made about their liability to pay therefor.   The services were performed by the plaintiff at the request of the board of

directors and the law implies a promise to pay what
they are reasonably worth, so far as they had not been
fixed by the resolution of the board.   *   *   *   There
is another consideration which leads to the same con-
clusion in this case:   During the time for which plain-
tiff claims pay for services, the members of the board
of directors were the only stockholders in the cor-
poration.   The resolution and motion above referred
to as not appearing in the records of the corporation,
had not only the sanction of the board of directors,
but of each individual stockholder of the corporation;
they could not be heard to complain as stockholders
of their own action as directors, and none of them have
complained."

[13]   Where a corporation accepts the benefits of
a contract, it is held by so doing to have ratified the
contract and waived any informalities in its execution.

A corporation which has received the consideration
of a contract cannot defend against an action on the
contract on the ground that the provisions of the
statute, charter or by-laws prescribing the form of the
contract, or the mode of executing it, were not com-
plied with by the officer acting for the corporation in
the execution of the contract.   In other words, any
informality in executing a contract is waived and can-
not be set up as a defense where the corporation has
accepted and retained the benefits of the contract.
3 Fletcher Cyc. Corp., p. 2445.

Judge Whittle, speaking for the court in *Meem* v.
*Big Ax Pocahontas Coal Co.*, 117 Va. 770, 86 S. E. 118,
said:   "The contract in the present case was within
the charter powers of the corporation, and was made
with the knowledge and consent of a majority of both
.the stockholders and the board of directors, and, as
the circumstances strongly tend to show, of the presi-

dent as well, who owned the rest of the stock and was the only other director. In these circumstances, though the making of the contract in its inception may have been irregular, it was not a void act. It was done by the procurement of officers and stockholders who possessed full power to have made the contract as an original proposition, and the defendant received the benefit. By their conduct those constituting the governing body of the corporation will be held to have waived such irregularity, and the defendant is estopped to rely on it as a defense."

In *Winston* v. *Gordon*, 115 Va. 899, 80 S. E. 756, this court said: "An act of an agent from which he derives no personal benefit, but which is done in good faith for the benefit of his principal, and which was apparently necessary and would redound to his benefit, will be held to have been ratified and acquiesced in, and thereby rendered valid upon slight evidence. This doctrine is as applicable to corporations as to other principals."

[14] From a careful examination of the evidence it plainly appears that the plaintiff's contract with the defendant company was legal and binding, and not against public policy, and that he has faithfully executed the same. He personally endorsed for the company and had his brother, John E. Lane and Lane Brothers & Company and the Altavista Land and Improvement Company endorse for it. By the sale of stock and his arrangements for borrowing money, he raised nearly $400,000 to be used in building, equipping and operating the mill, saved the company from bankruptcy and finally got it on a paying and profitable basis. He continued his efforts to finance and bear the burdens of financing the defendant company until its obligations, which amounted to $142,600, were paid off in May, 1916.

On April 12, 1911, a statement of the company's condition showed assets aggregating less than $39,000 and liabilities amounting to $5,681. And on May 10, 1912, one year after the plaintiff had undertaken to finance the company, its assets were $417,499 and its liabilities $173,000. In 1917, the company paid accumulated dividends, and has since that date continued the payment of dividends each year. The net profits for the year ending April 30, 1920, were $202,149.50 and the net surplus was $302,596.50. Just prior to his death A. C. Hutchinson offered stock for sale at less than par value, and on the day this suit was instituted the market value of the stock was $300 per share. It was admitted by some of the defendant's leading witnesses who are stockholders in the company that without plaintiff's assistance the mill "could never have been started."

There is no error in the rulings of the court in granting or refusing instructions of which the defendant can complain.

We are of opinion that the defendant company was fortunate to secure the service of the plaintiff at $25,000, and that there is ample evidence to support the verdict of the jury.

[15] The defendant in error not being entitled to, and having in this court relinquished his right to recover, interest on the judgment for $25,000 from May 15, 1916, to October 18, 1920, the judgment entered by the trial court will be reversed as to said interest and affirmed as to the principal sum of $25,000, with interest thereon from October 18, 1920, till paid. The plaintiff in error having substantially prevailed in the matter of interest, as aforesaid, judgment will be entered here in its favor for the costs incurred by it in this court.

*Affirmed in part and reversed in part.*