# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

ONE INTERNATIONAL HARVESTER COMPANY TRUCK, ETC. V.
COMMONWEALTH OF VIRGINIA.

January 12, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Browning and
Chinn, JJ.

The opinion states the case.

*Haw & Haw,* for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys-General,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

The International Harvester Company of America, Incorporated, lienor here, complains of a judgment forfeiting to the Commonwealth one of its International motor trucks, seized in Brunswick county, Virginia, when transporting ardent spirits contrary to law.

The lienor is a manufacturer whose business is national and international, with offices widely located, one of them being in New York City. On May 28, 1931, acting through a local salesman, J. F. Abbott, it entered into a sales agreement with the Airlines Express, Incorporated, a Delaware corporation, for the sale of six motor trucks. This agreement was not unconditional, but subject to the written approval of a branch manager, and was in due course referred to E. O. Snider, of New York, credit manager, who according to custom proceeded to investigate the standing of the would-be purchaser. He, upon information secured, communicated with Hefter & Company, of Brooklyn, paper box manufacturers, who replied that "this concern does our trucking between New York and Boston in a very satisfactory way. They were very highly recommended to us." He communicated with Starin New Haven Steamship Line, at Pier 13, North river. That company, in answer, said the Airline Express also maintained an office at Pier 13 and did shipping by their line; that it had known its active mana-

gers, Mr. Florio and Mr. Kerns, for about a month, and that their character, habits and business ability, so far as observation went, were good. He communicated with John Fonnelli, 75 Thompson street, New York, who wrote that the character of the men in charge was good and their business ability excellent. The Gillette Razor Company said that this express company had done work for it in a satisfactory manner. From nowhere was an unfavorable report received, and so, upon information from the credit manager, Mr. Zimmerman, an assistant branch manager, approved the sale.

There was a settlement on July 10. The contract price was $24,560.69, of which $1,450 was paid in cash and the balance secured by a chattel mortgage properly recorded in New York county on July 19, 1931. The trucks themselves were delivered on July 12—five from Wooster, Ohio, where they had been sent to be fitted with special bodies, and one from Long Island City. On July 24, 1931, three of them were seized in Virginia while transporting ardent spirits—two in King William county and one in Brunswick. Those in King William county were released by the circuit court there, it being of opinion that the lienor was free from blame; that in Brunswick county was, as we have seen, forfeited to the Commonwealth. There is due on it, secured as aforesaid, $3,637.64, while the truck itself is not now worth over $2,500. The notes representing this unpaid balance have not been assigned and are held by the original payee.

Both Kerns and Florio had previously worked for the Bill Neeland Express Company, a reputable concern, but only Kerns was known to the lienor. That knowledge was not intimate but favorable. The Airlines Express Company had been chartered eight days before the agreement to sell was executed. It was a new company—claimant knew that it was a new company—but it was already in business at Pier 13, North river, from which it was then operating four other trucks under the control of these two men.

The sales agreement was followed up, as we have seen, by routine inquiries as to the solvency of the purchaser. Nothing was said about any possible unlawful use, and so far as this record shows there was no occasion to look into that aspect of the transaction. Zimmerman, who had authority to confirm the sale and who did confirm it, said that he would not have done so had he suspected any improper purpose.

It was an ordinary sale made in an ordinary way after an ordinary investigation of the would-be purchaser. It is entirely possible such use was always contemplated, but there was nothing to put the vendor on notice or to excite its suspicion. Certainly it would be unreasonable to require the International Harvester Company to look into the possible "bootlegging" activities of all customers—undercover work which many of them would resent. Moreover, it would scarcely have retained notes so tainted, and if tainted they would probably have appeared in the hands of some third party.

It is argued that since Mr. Abbott has not testified we have the right to assume his failure to do so was due to guilty knowledge. Certainly the unexplained failure to call an available witness on matters peculiarly within his knowledge, frequently gives rise to the presumption that his evidence would be adverse. *Altavista Cotton Mills* v. *Lane,* 133 Va. 1, 112 S. E. 637. But that presumption falls before the facts in this case. Abbott reported for investigation his conditional sale. This was according to custom. An investigation was made, and made in due course, by those whose duty it was to investigate. They have testified, and so for that reason it was not necessary to incur the expense of bringing this witness from New York. As a matter of fact, it was stated at the bar of this court, and not questioned, that his presence was prevented by a death in his family.

In the case of *Myown Development Corporation* v. *Commonwealth, ante,* page 1004, 167 S. E. 374, this day decided,

we have considered presumptions, burden of proof, its amount and character, and so it is not necessary to repeat here what was said there. We find nothing in the record to charge this lienor with guilty knowledge, and so it is unnecessary to consider the effect of the judgment of release entered in the Circuit Court of King William county. That here appealed from is reversed.

*Reversed.*