# Richmond

## GARY RAY ROBINSON v. COMMONWEALTH OF VIRGINIA.

April 25, 1966.

Record No. 6129.

Present, All the Justices.

*Wayland P. Britton*, for the plaintiff in error.

*M. Harris Parker, Assistant Attorney General (Robert Y. Button, Attorney General*, on brief), for the Commonwealth.

CARRICO, J., delivered the opinion of the court.

Gary Ray Robinson, the defendant, was indicted for the maiming of Carl J. Griffin. Code, § 18.1-65.[1] The defendant was tried by the court, without a jury, was found guilty of unlawful wounding and was sentenced to pay a fine of $250.00 and to serve twelve months in jail. To the final order of the court, the defendant was granted this writ of error.

The evidence, stated in the light most favorable to the Commonwealth, shows that on the night of June 20, 1964, Griffin visited the Airport Grill in Portsmouth. As he was preparing to leave, he discovered that it was raining and so rushed out to raise the windows on his Volkswagen automobile, which was parked in a lighted area.

Griffin entered the car from the driver's side and reached over and raised the window on the opposite side. As he prepared to raise the window on the left side, he was struck in the face by someone wielding an unknown object. He looked his assailant "right in the face."

---

[1] "§ 18.1-65. *Shooting, stabbing, etc., with intent to maim, kill, etc.*—If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be confined in the penitentiary not less than three nor more than twenty years. If such act be done unlawfully but not maliciously, with the intent aforesaid, the offender shall, at the discretion of the jury, be confined in the penitentiary not less than one nor more than five years or be confined in jail not exceeding twelve months, and fined not exceeding five hundred dollars."

He "pleaded with the man to stop. [The man] said something about blood [and] hit me again . . . about 4 times with whatever he was hitting me with."

Griffin attempted to get out of the automobile but the attacker slammed the door on his leg "and run and got in another automobile and left."

Griffin reentered the Grill and was informed by "3 people . . . standing in the door" that it was the defendant who had attacked him and that the defendant's automobile was parked outside. He secured the license number of the vehicle and then "saw a car come up and somebody jump out of the car, jump in this car which I took the license number of, and then shot away."

The police were summoned and Griffin was taken to the hospital. Three stitches were required to close one laceration on his face and two to close another. He also had a black eye, abrasions on his right forehead and right leg and broken dentures.

Griffin had never seen the defendant "before in [his] life." On the night of the attack, Griffin identified a photograph which was shown to him by the police as looking "like . . . the face of this Mr. Robinson," the defendant. The next day, Griffin accompanied a detective to the defendant's home, the address of which had been discovered through the license number of the defendant's vehicle. When Griffin saw the defendant, he told the detective, "That is his face." While on the witness stand, Griffin positively identified the defendant as his assailant.

The defendant denied to the police that he was at the Airport Grill on the night of the attack and attempted to explain the presence there of his automobile by saying that he had left it "up there during the day, and sent some boy to pick it up." On the witness stand, however, the defendant admitted that he had been at the Grill on the night in question but denied any knowledge of the attack upon Griffin.

■ The defendant first contends that the three persons "standing in the door," who told Griffin that it was the defendant who assaulted him, "did not testify nor was it explained to the court, the reason they were not *subpeoned* or present at the trial, which constitutes error."

The defendant says that Griffin's testimony as to what he was told by three persons was "*heresay*." Undoubtedly that is true, but the testimony was elicited from Griffin during cross-examination by the defendant and he, therefore, can have no ground for complaint. There

was no objection or motion with respect to the testimony upon which the court could make a ruling, so it is difficult to perceive how anything the court did "constitutes error."

The failure of the Commonwealth to call the three persons as witnesses, the defendant argues, raises a presumption that they would have testified adversely to the Commonwealth. It is true that the failure of a party to call a material witness frequently raises a presumption that his testimony would not have been favorable to such party. *Robbins* v. *Power Company*, 204 Va. 390, 393, 131 S. E. 2d 274; *Altavista Cotton Mills* v. *Lane*, 133 Va. 1, 13-14, 112 S. E. 637.

But such a presumption cannot apply here. The only point in dispute in the case was the identification of the defendant as Griffin's attacker. On that crucial point, Griffin's testimony as to what the three persons told him showed clearly that their testimony, had they testified, would have been adverse to the defendant and not to the Commonwealth.

The Commonwealth was not required to call every possible witness in proving its case. In addition to Griffin's positive identification of the defendant, another Commonwealth witness, Charles D. Fleming, testified that he observed the assault upon Griffin and stated unequivocally that it was inflicted by the defendant, who was known to the witness. Assuming that the three persons "standing in the door" were known to the Commonwealth and were subject to be summoned as witnesses, their testimony would have been merely cumulative and corroborative and, thus, unnecessary, *One Inter'n'l Truck* v. *Com'lth*, 159 Va. 1010, 1013, 167 S. E. 376; 20 Am. Jur., Evidence, § 188, p. 193.

The defendant next contends that the "failure by the court to strike [Griffin's] testimony constitutes error."

We have searched the record in vain to find a motion of the defendant to strike the testimony of Griffin. While there was a motion made to strike the evidence at the conclusion of the Commonwealth's case, it was in no way directed to what the defendant now, belatedly, argues in his brief.

Be that as it may, we will consider the defendant's arguments in this connection so that they may, for once and for all, be laid to rest.

The defendant says that Griffin's testimony should have been stricken because he "could not identify the defendant on the following day after the alleged offense."

This argument flies directly into the face of Griffin's testimony

that he identified the photograph of the defendant, exhibited to him by the police at 3 a.m. of the day following the assault. The argument completely ignores Griffin's testimony that when he accompanied the detective to the defendant's home the day following the assault, he identified the defendant to the officer by saying, "That is his face."

The defendant also says that Griffin's testimony should have been stricken because no warrant was "secured until approximately 1 week" after the alleged offense.

The stating of this objection should be sufficient to answer it. Griffin immediately reported the offense to the police and an investigation was conducted. Why the warrant was not issued until a week later is not explained in the record, nor was any explanation necessary since no point was made of the question in the trial in the court below.

The defendant's next contention is that the court erred in limiting his cross-examination of the Commonwealth witness, Charles D. Fleming.

Fleming, who was acquainted with the defendant was seated in an automobile in the parking area of the Airport Grill, in close proximity to Griffin's Volkswagen. Fleming saw the attack upon Griffin, testified to the details thereof, and identified the defendant as the assailant.

In the course of cross-examination, Fleming was asked who was in the automobile with him. He stated, "Two other people." He was then asked, "Who are the other 2 people?" Fleming replied, "Well, I would rather not say."

Upon objection by the Commonwealth's Attorney that the information sought by the defendant was irrelevant, the court ruled that the defendant would have to establish the relevancy of the identity of the other persons in Fleming's automobile. The reply of defense counsel was merely, "He is on cross examination." The court then ruled, "at the moment," Fleming would not be required to divulge the names of the occupants of his vehicle. Defense counsel then asked the court to be heard in chambers, which request the court denied.

At another point in the cross-examination, Fleming stated that he was waiting for someone to come out of the Grill. He was asked, "Will you tell the Court who you were waiting for?" The Commonwealth's Attorney objected, stating, "I don't think it is relevant." Defense counsel made no reply and the court sustained the objection.

It is clear, from the record, that the trial court invited the defendant to establish some relevancy for the answers he sought from the witness before the answers would be required. Instead of stating that he desired the names of the persons in question so that they might be called as witnesses, or for some other valid reason, the defendant stood mute. In the absence of such a valid reason, one is led to the conclusion that the purpose of the defendant's questions was merely to embarrass the witness or to conduct a fishing expedition. Under such circumstances, there was no error in the court's ruling.

Nor was it error for the court to refuse to hear counsel in chambers concerning the disputed testimony. The case was being tried without a jury and the court afforded counsel full opportunity to be heard in open court. What possible error the court committed in this respect has not even been suggested to us by the defendant, and so the point will be given no further consideration.

■ The defendant next complains of the testimony of the Commonwealth witness, J. W. Frazier, and says "his entire evidence should be struck."

Frazier testified that he saw the defendant at the Airport Grill one night and that the defendant "asked me to hang around, he might want me to help him, to back him up, and I wanted nothing to do with it and I left."

Frazier further stated that subsequent to the assault upon Griffin, he saw the defendant one night at an establishment known as Chandlers and that the defendant was "bragging . . . that he did beat this man up, something about the biggest man in the grill, that night."

Frazier was asked on direct examination if the defendant had told him where he had "beat this man up." Frazier replied, "I already knew where at and who it was." When pressed as to whether the defendant had identified the victim of his beating, Frazier said that he assumed that Griffin was the man the defendant had "beat up."

Upon the defendant's objection to what Frazier "assumed in this case," the court admonished the witness, "Just testify to what you were told by the Defendant as a witness in this case. You cannot assume anything."

No other objection or motion with respect to Frazier's testimony appears in the record. The testimony was, therefore, before the court to be accorded such weight as was deemed proper by the court. The record is devoid of any error concerning this facet of the case.

■ The defendant's next point is that Griffin stated that "he would make it worthwhile for the witnesses of the Commonwealth to testify; that because of this statement the evidence of these witnesses should be struck."

Janie Robinson, testifying for the defendant, stated that when Griffin "came out of the police station . . after the trial in the lower court" he "walked out to the 4 or 5 people that were standing there" and said, "it would be well worth your while when this is over with."

Griffin, when questioned about the point on the witness stand, denied that he had made the statement attributed to him by Janie Robinson. Fleming and Frazier, the Commonwealth's witnesses, were questioned as to whether Griffin had made such a statement to them. Each denied any knowledge thereof. It was entirely proper, then, for the trial court, in resolving this issue of fact, to reject the testimony of Janie Robinson as not being worthy of belief.

■ The defendant's final contention is that the evidence was insufficient to support his conviction.

Here, we might well echo the sentiments of the Commonwealth's Attorney, expressed when he arose to answer this same contention, asserted in the defendant's argument on his motion to strike. The Commonwealth's Attorney said, "I am amazed. We have 2 positive identifications. I think we certainly made a prima facie case; in fact, an excellent case."

This record presents an unusual and unpleasant picture—that of a belligerent bully, identified beyond question as the criminal agent, fired up by and pugnacious from the alcoholic beverages he had consumed, administering an unprovoked and senseless beating to a total stranger, in apparent satisfaction only of a cruel desire to draw blood and inflict hurt.

To say, under such circumstances, that the evidence was insufficient to convict would be to commit a travesty upon justice. To the contrary, we find the evidence wholly sufficient to sustain the conviction of the defendant and the judgment of the trial court will, accordingly, be affirmed.

*Affirmed.*