## Richmond

DERWIN JACKSON

v.

## COMMONWEALTH OF VIRGINIA

No. 1106-93-4

Decided January 31, 1995

COUNSEL

Vernon H. Miles, Sr., for appellant.

Kathleen B. Martin, Assistant Attorney General (James S. Gilmore, III, Attorney General, on brief), for appellee.

OPINION

BAKER, J.—Derwin Jackson (appellant) appeals from a judgment of the Circuit Court of Prince William County (trial court) that approved his jury trial conviction of robbery. Appellant contends that the evidence was insufficient to support his conviction and that the trial court erroneously admitted hearsay evidence given by a Commonwealth witness. For the reasons that follow, we affirm.

█ Upon familiar principles, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). On July 12, 1992, in the late afternoon, while shopping at a grocery store, Martha McCullough (victim) became "very nervous" when she noticed appellant "stalking her" and making eye contact with her. After purchasing several bags of groceries and leaving the store, victim again saw appellant outside as she was placing her groceries into the passenger side of her black Nissan Pathfinder (van). The van's motor was running and victim observed appellant approach the driver's side door. She thought he was going to open that door. Instead, appellant walked around the front of the van and leaned against the store railing as victim continued to load the van. As victim turned to place the last bag inside the van, she saw that appellant had entered the vehicle and was sitting in the driver's seat. Victim was "apprehensive" as she told appellant that he was in the wrong car. Appellant responded by twice demanding that victim get into the van. Victim described appellant as a black male, between thirty and forty years old, and of average height and weight. She testified that appellant "looked at [her] with the cruelest eyes that [she] ever saw on a human" as he again demanded that she "get in the car." Victim feared that she "was dead and . . . started praying to God." Appellant "gunned the car and left the parking lot" without victim.

Jessie E. Pippen, Jr. (Pippen) and Roy A. Thomas, Jr. (Thomas), two witnesses, testified that they saw a black Nissan Pathfinder operated by appellant speed across the shopping center

parking lot, run a stop sign, slide sideways, and hit a curb near Pippen's truck. Appellant aimed a nine millimeter gun at Pippen's face, and threaten to shoot if the two men chased him. Pippen radioed the police and both Pippen and Thomas proceeded to chase appellant.

Detective William Cox (Cox) investigated the robbery. The vehicle was recovered in Washington, D.C., two weeks later. On direct examination, Cox testified that he obtained a photo of appellant after appellant had developed as a suspect in the robbery of victim's vehicle. Appellant's photo was included in the photographic array shown to victim, along with five other comparable photos. Victim immediately identified appellant as the robber. The array was admitted into evidence without objection.

## I.

Appellant first contends that because the evidence was insufficient to support a charge of robbery, the trial court erred when it denied his motion to strike the evidence and dismiss. We disagree. Robbery "is defined as 'the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation.' " *Durham v. Commonwealth*, 214 Va. 166, 168, 198 S.E.2d 603, 605 (1973) (citation omitted). We agree that robbery is an offense that requires proof of something more than merely taking property from another in a face-to-face encounter. However, the charge in this case is supported by additional evidence. Here, viewed in the light most favorable to the Commonwealth, the evidence discloses that appellant "stalked" victim for a considerable period before taking the van, lingered near her while she loaded her groceries, entered her vehicle, and twice ordered her to get inside the van. Victim testified that she feared bodily harm, even death. Appellant then "gunned" the van's motor and drove away. The totality of appellant's words and willful conduct were sufficient to support a rational finder of fact's conclusion that appellant robbed victim of personal property from her presence and possession, against her will, by intimidation.

## II.

Appellant further asserts that the trial court committed reversible error when it refused to strike testimonial evidence given by Detective Cox in response to appellant's cross-examination of Cox.

Appellant argues that the testimony was inadmissible hearsay. We disagree.

On direct examination for the Commonwealth, Cox testified that he had obtained a photograph of appellant after appellant had "developed" as a suspect. On direct examination, Cox did not testify how that development occurred. On cross-examination, appellant sought more information from Cox concerning the photograph. Appellant asked Cox if he had "selected" the photograph based upon a previous description given to him by victim. When Cox responded "no," appellant pressed further and asked if victim had given Cox a previous description. He responded that "the original description that was given came from the original report." Appellant then asked if Cox had the report with him. He responded that he did. Appellant persisted and asked, "So you had a description of the suspect?" Appellant continued to press for details as to how Cox had received the information that enabled him to obtain appellant's photograph and the following exchange occurred:

Q. So you had a description of the suspect?

A. (The witness nodded his head.)

Q. And you selected six photographs that basically fit that description? Is that the way you do that?

A. No, sir, the Pathfinder was recovered in Washington, D.C. A Washington Metropolitan police officer had seen a black male running from the Pathfinder when it was stopped on Stevens Road. He ran to an address on Stevens Road and he was seen running into the house. He spoke with a person in the house which told him that the subject that had run in the house and subsequently jumped out a second flor [sic] window to the rear was [appellant]. Based on that I got a photograph of [appellant] and put him in a lineup.

Appellant contends that Cox's response was inadmissible hearsay evidence. We find no error in the trial court's denial of appellant's motion to exclude the testimony. The testimony was offered in response to questions relating to testimony given on direct examination and was responsive to the line of questions being propounded. *See Robinson v. Commonwealth*, 207 Va. 66, 68, 147 S.E.2d 730, 732 (1966); *Whitten v. McClelland*, 137 Va. 726,

741, 120 S.E. 146, 150 (1923). *See* 3 *Wigmore on Evidence* § 785 (Chadbourn rev. ed. 1970) (a party may object to the answer to a question he asks only if the answer is not responsive).

Moreover, the answer was not hearsay. It was given only as a response to a series of questions relating to how appellant's photograph was selected. Appellant may have been entitled to a cautionary instruction to the jury limiting its consideration to explain how Cox selected appellant's photograph, and not as tending to prove his guilt. However, no such instruction was requested by appellant. *See Upchurch v. Commonwealth,* 220 Va. 408, 258 S.E.2d 506 (1979).

For the reasons stated, the judgment of the trial court is affirmed.

*Affirmed.*

Fitzpatrick, J., concurred.

Benton, J., concurring.

I join in Part I of the majority opinion's disposition. I do not join in Part II because I would hold that the trial judge erred in refusing to strike the officer's testimony. Although I believe that the trial judge erred by refusing to strike the officer's nonresponsive and hearsay testimony, I also believe the error was harmless and, thus, join in affirming the conviction.

Jackson's attorney did indeed ask a series of questions relating to the manner in which appellant's photograph was selected. The officer's response, however, went beyond merely answering how he selected photographs based upon descriptions of the suspects. In recounting events which occurred in Washington, D.C. two weeks after the robbery in Manassas, Virginia, the officer's answer was unrelated and, thus, nonresponsive to defense counsel's question.

The officer's response contained hearsay as well. "Hearsay evidence is defined as a spoken or written out-of-court declaration or nonverbal assertion offered in court to prove the truth of the matter asserted therein." *Arnold v. Commonwealth,* 4 Va. App. 275, 279-80, 356 S.E.2d 847, 850 (1987).

[Hearsay] evidence has been defined as evidence which derives its value, not solely from the credit to be given the

witness on the stand, but in part from the veracity and competency of some other person. It is primarily testimony which consists in a narration by one person of matters told him by another.

*Williams v. Morris*, 200 Va. 413, 416-17, 105 S.E.2d 829, 832 (1958). The officer testified about statements made by another police officer who was told statements made by yet another person. Thus, the officer's testimony impermissibly detailed facts related to him out of court by a declarant, including statements made to the declarant by another person. *See Stevenson v. Commonwealth*, 218 Va. 462, 237 S.E.2d 779 (1977); *Williams v. Commonwealth*, 213 Va. 45, 189 S.E.2d 378 (1972).

I would hold, however, that the "error was harmless beyond a reasonable doubt, because the circumstantial evidence adduced [at trial] . . . was overwhelming without the . . . declarations." *Goins v. Commonwealth*, 218 Va. 285, 288, 237 S.E.2d 136, 138 (1977). The evidence proved that the victim and the robber were "face to face" on a "sunshiny day." When the victim was shown a photographic array of six photographs, she immediately pointed to Jackson's photograph as the robber. The victim also identified him at trial. In addition, the two witnesses to the robbery recognized Jackson as the man they saw drive away in the victim's car immediately after the robbery.

Jackson does not contend that the testimony of the victim and the two witnesses was improperly admitted. Their unrebutted identification testimony overwhelmingly proved Jackson's identity as the robber. The police officer's testimony only related events that occurred two weeks after the robbery and did not place Jackson at the site of the robbery. Thus, the error in failing to strike the officer's testimony was harmless.

For these reasons, I would also affirm the conviction.