**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DEBORAH WHEATLEY, as
Administrator of the Estate of Fiona
Wright, deceased,
<u>Plaintiff-Appellant,</u>

v.

UNITED STATES OF AMERICA,                                              No. 98-2658
<u>Defendant-Appellee,</u>

and

FAIRFAX COUNTY FIRE & RESCUE
DEPARTMENT; GODWIN CORPORATION,
<u>Defendants.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-98-580-A)

Argued: September 24, 1999

Decided: November 30, 1999

Before LUTTIG, MICHAEL, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion. Judge King wrote an
opinion dissenting in part.

_____

**COUNSEL**

**ARGUED:** Kenneth Warren Smith, MILLER & ASSOCIATES,
Alexandria, Virginia, for Appellant. Jeri Kaylene Somers, Assistant

United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:**
Michael J. Miller, MILLER & ASSOCIATES, Alexandria, Virginia,
for Appellant. Helen F. Fahey, United States Attorney, OFFICE OF
THE UNITED STATES ATTORNEY, Alexandria, Virginia, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Deborah Wheatley appeals from the district court's order
dismissing her negligent treatment claims against military guards in
Virginia and a military hospital in Georgia arising out of treatment
administered to her now-deceased daughter in 1997 and 1994, respec-
tively. For the reasons that follow, we affirm.

I.

Fiona Wright, decedent, was treated for asthma at Winn Army
Hospital at Fort Stewart, Georgia, in September of 1994 and again in
March of 1996.

On April 3, 1997, Wright awoke at home having difficulty breath-
ing, and Wheatley, Wright's mother and now the administrator of
Wright's estate, drove Wright to the Pence Gate at Fort Belvoir, Vir-
ginia, on her way to the DeWitt Army Hospital on the base. Wheatley
drove while holding Wright (who had fainted) with one hand and
working the stick shift with the other.

The guards at Pence Gate stopped Wright, as is the routine, were
told by Wheatley that her daughter was not breathing, and saw that
Wright was leaning over the console of the car. The guards removed

2

Wright from the car, called their supervisor (who contacted emergency services), and performed rescue breathing on Wright until emergency personnel arrived to transport her to the hospital, where she died later that morning.

On August 13, 1997, Wheatley submitted Standard Form 95 for damages under the Federal Tort Claims Act (FTCA), and included a notice of claim, which identified the location of the injuries as DeWitt Army Medical Center and the Winn Army Hospital, and the time frame as "the calendar year 1996 [continuing] into 1997 until April 3, 1997." J.A. 98.

The Department of the Army denied the claim on April 1, 1998. Following the filing of suit in federal district court, the court granted the government's motion to dismiss Wheatley's case on the grounds that the guards were protected by Virginia's Good Samaritan law and that any claims Wheatley made as to Wright's treatment at Winn Army Hospital in 1994 were barred for failure to exhaust administrative remedies. This appeal followed.

II.

Appellant first claims that the district court erred in concluding that Virginia's Good Samaritan statute, Va. Code § 8.01-225(A)(1), protected the guards at Pence Gate from suit. In this regard, Wheatley contends that the guards created, rather than responded to, an emergency by refusing to wave her through the gate in the first instance.

Because the FTCA makes the United States liable for injury "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred," 28 U.S.C.§ 1346(b) (emphasis added), Virginia law applies to Wheatley's claim that the guards acted negligently at the gate. Virginia's Good Samaritan statute reads:

> Any person who, in good faith, renders emergency care or assistance, without compensation, to any ill or injured person at the scene of an accident, fire, or any life-threatening emergency, or en route therefrom to any hospital, medical

3

clinic or doctor's office, shall not be liable for any civil damages for acts or omissions resulting from the rendering of such care or assistance.

Va. Code § 8.01-225(A)(1) (emphasis added).

There is no question that the guards rendered emergency care assistance, as described in the Virginia statute, when they performed rescue breathing on Wright <u>after</u> removing her from the car. The only question is whether the guards were protected by the statute when they did not immediately wave Wheatley's car through the gate. Because the life-threatening emergency -- Wright's inability to breathe -- began before she arrived at the gate, and was apparent to the guards at the gate, the acts of the guards to provide emergency assistance, including the act of maintaining the car at the gate for that purpose, are clearly covered by the statute.

Wheatley argues that the guards' acts of stopping and holding the car at the gate were not in the course of the guards' administration of emergency care assistance because, she maintains, these acts <u>created</u> the emergency, and were therefore not a <u>response</u> to an emergency. <u>See</u> Appellant's Br. at 8. The record, however, clearly shows that the emergency had begun long before Wheatley reached the gate: Wright's asthma attack began at home, J.A. 9. In obvious recognition of the emergency, Wheatley had driven through at least one red light in route to the hospital, J.A. 33, operating the stick shift with one hand while supporting her daughter's body with the other hand, J.A. 111-12. In fact, at the gate, Wheatley herself informed the guards that her daughter was not breathing, J.A. 42. Finally, Wheatley even described the incident in her administrative complaint as "an arriving emergency." J.A. 90. Therefore, at the time the guards made the decision not to wave Wheatley through, they were already presented with a life-threatening emergency as encompassed by the statute. Their administration of emergency assistance began when they chose to hold the car and to perform rescue breathing while other professional emergency care assistance was on the way.

Because the guards' decision to hold Wright at the gate was made in the course of administering emergency care assistance during a life-threatening emergency, the district court did not err in holding

4

that Virginia's Good Samaritan statute protected the guards from suit for their actions.

III.

Appellant also argues that the district court erred in concluding that her claim of negligence at Winn Army Hospital in 1994 was barred because she had failed to exhaust her administrative remedies.

The FTCA requires a person suing the federal government to "have first presented the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a). This requirement is jurisdictional and cannot be waived. See Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994). As this court explained in Ahmed,

> Section 2675(a) . . . and 28 C.F.R. § 14.2(a) require two elements for sufficient presentment of a claim to an agency: (1) written notice sufficient to cause the agency to investigate, and (2) a sum-certain value on the claim.

Id. at 517 (emphasis added).

In her administrative claim, Wheatley identified the time period for the injuries as "the calendar year 1996 . . . until April 3, 1997." J.A. 98. In denying the claim, the Department of the Army found no negligence "during the period January 1996 through April 3, 1997." J.A. 15. Because there was a visit to Winn Army Hospital in 1996, during the time period referenced by Wheatley, there was nothing in the administrative claim "to cause the agency to investigate" events in 1994 at the same hospital. Therefore, the district court did not err in concluding that Wheatley could not bring her 1994 claim before the court because she had not exhausted her administrative remedies on that claim.

Accordingly, for the reasons stated herein, the judgment of the district court is affirmed.

AFFIRMED

5

KING, Circuit Judge, dissenting in part:

Because I believe the majority has overbroadly applied the "Good Samaritan" defense to the claims arising from the events at Pence Gate, I respectfully dissent.[1] Put simply, Ms. Wheatley asserts that the guards were negligent in refusing to allow her to pass promptly through Pence Gate and deliver her ailing fourteen-year-old daughter, Fiona Wright (the dependent child of an American soldier), to the nearby DeWitt Army Community Hospital on Fort Belvoir. On its face, this allegation states a claim not barred by the Good Samaritan defense, and it should not have been dismissed under Rule 12(b)(6).[2]

I.

In this appeal, we must determine whether Virginia's Good Samaritan statute immunizes, as a matter of law, each allegedly negligent act of the guards at Pence Gate on that fateful night in April 1997. While I have no quarrel with this statute, the immunity it provides is in derogation of common law liability and must be strictly construed. See Barnette v. Dickens, 135 S.E.2d 109, 112 (Va. 1964) ("Generally the test for negligence is whether the act or omission was done in the exercise of reasonable care"); Creasy v. United States, 645 F. Supp. 853, 856 (W.D. Va. 1986) ("volunteers are normally liable for negligence in Virginia"); Gilpin v. Joyce, 515 S.E.2d 124, 126 (Va. 1999) ("Under familiar principles, because this statute is in derogation of the common law, we will strictly construe it.").

_____

[1] I agree that Ms. Wheatley failed to exhaust her administrative remedies in connection with her claim of negligence at Winn Army Hospital in 1994, and I therefore concur in the balance of the majority opinion.
[2] We review a Rule 12(b)(6) dismissal de novo. Estate Constr. Co. v. Miller & Smith Holding Co., Inc., 14 F.3d 213, 217 (4th Cir. 1994). In the course of that review, we construe each factual allegation -- and the inferences therefrom -- in the nonmoving party's favor, treating them as true. Id. at 217-18. Thus, "[t]he purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999) (quotation omitted).

6

Ms. Wheatley plainly alleges that the guards were negligent in "refusing to allow the plaintiff to pass through the gate and take the decedent directly to the emergency room." Because the guards controlled outside access to DeWitt Hospital, Ms. Wheatley contends they had a duty to permit certain persons (including, for example, patients in distress) to proceed promptly through Pence Gate.[3] This is a duty separate and distinct from any arising from the provision of emergency care. Ms. Wheatley thus states a claim under Virginia law: if she should have been permitted to promptly pass through Pence Gate, and the guards negligently impeded her from so doing, Ms. Wheatley may well be entitled to tort relief for her daughter's tragic death.

Whatever we say or believe about Ms. Wheatley's likelihood of success on this claim, one thing is clear; the Good Samaritan statutory defense under Virginia law did not and could not insulate the guards' initial acts at Pence Gate. In fact, by the time the guards began rendering emergency care, the negligent act -- preventing Ms. Wheatley from delivering Fiona directly to the emergency room-- was complete. Given that the plain language of the statute immunizes the guards only "for acts and omissions resulting from the rendering of such [emergency] care or assistance," Va. Code § 8.01-225(A)(1), the Good Samaritan defense is simply inapplicable to this part of Ms. Wheatley's claim.[4]

_____

[3] Ms. Wheatley's counsel represented at oral argument that Fort Belvoir was an open post and that Ms. Wheatley had a sticker on her car authorizing her presence there, implying that the guards should not have stopped her in the first place. The Government contravened these assertions at oral argument. In so doing, the Government demonstrated that there is a material factual dispute -- fatal to a Rule 12(b)(6) dismissal.

[4] Under similar circumstances, a Connecticut Superior Court held that the Good Samaritan defense did not insulate ambulance personnel from liability. See Shomsky v. City of Shelton Police Dep't, 1997 WL 746380 (Ct. Super. Ct. 1997) (unpublished disposition). In Shomsky, the plaintiff claimed that ambulance personnel were negligent not in the actual rendering of medical care and treatment, but in their delayed response to the emergency call. Id. at *1. Under an analogous Good Samaritan statute that covered ambulance personnel, the Connecticut court held that Shomsky's claim did "not come within the ambit of the `rendering emergency first aid' [statutory language] which pertains to the actual hands-on treatment at the scene." Id. (quotation omitted).

The majority sidesteps this aspect of Ms. Wheatley's claim by making findings unsupported by the complaint. For example, to justify the initial stop, the majority finds that "[t]he guards at Pence Gate stopped Wright, <u>as is the routine</u> . . . ." <u>Ante</u> at 2 (emphasis added).**5** Additionally, the majority makes other findings to justify the guards' decision to prevent Ms. Wheatley from driving to DeWitt Hospital.**6** We are, however, reviewing a Rule 12(b)(6) dismissal, and nothing in Ms. Wheatley's complaint supports these crucial factual determinations. Moreover, these determinations -- justifying the initial stop and the decision to prevent Ms. Wheatley from proceeding to DeWitt Hospital -- are entirely irrelevant to the issue here. The majority's reliance on these facts is therefore misplaced.

## II.

My conclusion is easily stated: the majority's application of the Good Samaritan defense is overbroad. This defense does not apply, as a matter of law, to the claim that Ms. Wheatley was negligently prevented from passing through Pence Gate and that her daughter's death proximately resulted therefrom. If Ms. Wheatley's claim is sustained by the evidence, her daughter Fiona died because she was negligently denied access to emergency care at DeWitt Hospital located

---

**5** The sole asserted basis for this finding is Ms. Wheatley's deposition statement that "[t]here were two M.P.'s, and one stepped out, and, you know, did a motion for me to stop at the gate, you know, <u>which you do anyway</u>." J.A. 112 (emphasis added). We should not consider this deposition evidence in reviewing a Rule 12(b)(6) dismissal. Were we to consider any evidence, however, it must be construed in the light most favorable to Ms. Wheatley. Reviewed accordingly, Ms. Wheatley's statement supports the proposition that she usually stops at Pence Gate, not that the guards usually stop her.

**6** These findings include, <u>inter alia</u>, the following: (1) the guards "saw that Wright was leaning over the console of the car"; (2) "Wheatley drove while holding Wright . . . with one hand and working the stick shift with the other"; and (3) "In obvious recognition of the emergency, Wheatley had driven through at least one red light in route to the hospital." <u>Ante</u> at 2, 4. The fact that it engages in appellate fact-finding to justify its decision reinforces my conclusion that the majority view is in error.

8

less than a mile from Pence Gate. It was -- tragically -- "A Hospital
Too Far."

9