# Richmond

## ANNA BARNETTE v. CURMAN B. DICKENS, TRADING AS PORTSMOUTH APPLIANCE AND SERVICE COMPANY.

March 9, 1964.

Record No. 5678.

Present, All the Justices.

*Lester E. Schlitz*, for the plaintiff in error.

*Harvey E. White, Jr.* (*White, Ryan & Reynolds*, on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The appellee, defendant below, filed a motion to dismiss this appeal on the ground that the appellant, plaintiff below, failed to designate sufficient parts of the record to be printed as required by Rule 5:1, § 6 of Rules of Court.

Subsection (a) of § 6 provides that counsel for appellant shall file "a designation of the parts of the record that he wishes printed," and that counsel for appellee shall file "a designation of the additional parts of the record that he wishes printed." Appellee did not file such designation, but printed in an appendix to his brief the evidence which he says should have been printed in the record. Under these circumstances appellee is not entitled to have the appeal dismissed and his motion is accordingly overruled. See *Jenkins* v. *Womack*, 201 Va. 68-9, 109 S.E.2d 97-8; *Frye* v. *Alford*, 203 Va. 461, 463, 125 S.E.2d 177-8.

Anna Barnette brought this action to recover damages for personal injuries allegedly sustained as a result of defendant's negligent installation of an automatic washing machine in her home.

A jury trial resulted in a verdict for defendant. Plaintiff's motion to set it aside was overruled, judgment was entered on the verdict and plaintiff appeals. Error is assigned to the exclusion of certain evidence offered by plaintiff, and to the granting of Instructions B and C for defendant.

In December 1960 defendant's employees installed an automatic washing machine in the kitchen of plaintiff's home and failed to remove the "shipping bands" from the machine. When plaintiff put the machine in operation shortly after its installation it began to vibrate with unusual force and motion. She "grabbed hold" of

it and held on to it to stop it but could not make it stop. Plaintiff testified that she was alone in her kitchen with the machine and she became frightened, fearing that the machine was going to "explode."

Plaintiff likened the machine to a "robot that had gone crazy," and testified that as she leaned against the machine to turn it off it shook her "head nearly off." After she stopped the machine, plaintiff testified, she walked out on her porch and sat down, having great difficulty in breathing. About noon plaintiff's husband arrived and put her to bed. He testified that plaintiff was gasping for breath and could not talk, and later became hysterical.

That night, plaintiff testified, she developed a severe headache and a physician was called. She continued to suffer headaches and dizziness and consulted physicians during the period between December 1960 and August 1961.

In August 1961 plaintiff consulted Dr. Neil Callahan, an ear, nose and throat specialist. Dr. Callahan diagnosed plaintiff's malady as a blocked Eustachian tube in the ear, which he said can cause and does cause intermittent dizziness and sometimes nausea. He further testified that plaintiff's ear difficulty was a condition existing before, but was aggravated by, the washing machine incident.

In November 1961 plaintiff began consultations with Dr. William F. Gibbs, a psychiatrist. Dr. Gibbs testified that the incident with the washing machine had brought about a moderately severe "traumatic neurosis" in plaintiff.

Plaintiff's husband testified that when he arrived home shortly after the washing machine incident he found the washer out of place by eighteen to twenty-four inches and damaged, the sink "busted up," and tile behind the washer damaged.

At the beginning of the trial defendant's attorney admitted in his opening statement that the defendant's agents failed to remove the "shipping bands" from the washing machine when they installed it, but denied that this was negligence. During the trial plaintiff attempted to introduce in evidence a copy of "Plumbing and Electrical Instructions," relating to the washing machine installed in plaintiff's kitchen. These instructions contained the following warning:

"CAUTION: Do not attempt to operate your Duomatic until the shipping brackets have been removed, the ground wire attached, and the installation has been completed by your serviceman or dealer."

The trial court refused to admit these instructions in evidence on the ground that defendant had admitted that the shipping brackets or bands were not removed. While excluding these installation instructions, the trial court stated in the presence of the jury: "I have not ruled anything about the negligence. I just ruled that it was admitted that the machine was installed with bands. The defendant is not admitting negligence. It is just admitting that the bands were on the machine."

Plaintiff's case was based on the charge that the washing machine was negligently installed by defendant. Although defendant admitted his failure to remove the shipping bands, he denied that this was negligence and the trial court called attention to this denial in excluding the proffered installation instructions. The installation instructions were admissible evidence to show that the shipping bands should have been removed by the defendant from the machine before it was operated. The effect of the trial court's ruling was to exclude evidence which bore materially upon defendant's alleged negligence.

"The general rule is that a litigant is entitled to introduce all competent, material and relevant evidence which tends to prove or disprove any material issue raised." *Hepler* v. *Hepler*, 195 Va. 611, 620, 79 S.E.2d 652, 657. Defendant's alleged negligence was a material issue and the exclusion of the installation instructions for the washing machine was error.

The trial court granted at defendant's request, and over plaintiff's objection, Instruction B, as follows:

"The Court instructs the jury that there can be no recovery by plaintiff for the neurotic condition unless the original negligence charged as causing the neurosis was the proximate cause of the neurosis; that in order to warrant a finding by the jury that negligence is the proximate cause of the neurosis, it must appear that said condition was the natural and probable consequence of the negligence. Hence, if the jury shall believe from the evidence that said condition was not the result naturally and reasonably to be expected from the injury received by plaintiff in the accident and that it was not the natural and probable consequence of the alleged original negligence of the defendant, then the jury cannot find any damages for the plaintiff on account of said neurosis."

Instruction B, in its concluding sentence, told the jury that if the plaintiff's neurosis was not a result naturally and reasonably to be

expected from the injury received by the plaintiff in the accident, she was not entitled to any damages on account of said neurosis. That was not a correct statement of the law.

Generally the test for negligence is whether the act or omission was done in the exercise of reasonable care. Whether reasonable care was exercised depends upon what a reasonably prudent person, with knowledge of the circumstances, ought to have foreseen in regard to the consequences of his act or omission. However, the precise nature of the consequences need not be foreseen. "It is enough if the act [or omission] is such that the party ought to have anticipated that it was liable to result in injury to others." *Norfolk & W. Ry. Co.* v. *Whitehurst*, 125 Va. 260, 264, 99 S.E. 568, 569. See also *Gregory* v. *Lehigh Cement Co.*, 157 Va. 545, 559, 162 S.E. 881, 885; *Scott* v. *Simms*, 188 Va. 808, 818, 51 S.E.2d 250, 254; *Dockery* v. *City of Norton*, 204 Va. 752, 755-6, 133 S.E.2d 296, 299. Thus, whether an act or omission, not in and of itself negligent, becomes negligent with respect to the injured party depends upon the reasonable foreseeability of harmful consequences.

Once the act or omission is determined to be negligent with respect to the injured party, the negligent party becomes liable for all the injurious consequences which result naturally from such act or omission. *Norfolk & W. Ry. Co.* v. *Whitehurst, supra.*

Instruction B, as given, was erroneous in that it required plaintiff's mental anguish or neurosis to be foreseeable as a result of the injury.

The trial court granted, over plaintiff's objection, Instruction C, as follows:

"The Court instructs the jury that where a party litigant has the power to elicit evidence from a witness, who is competent to speak, and does not avail himself of such testimony, the presumption is that it would be against him."

Defendant stated in his brief that the instruction was offered "only in connection with plaintiff's failure to produce three of her attending physicians at the trial."

Plaintiff did produce two of her attending physicians whose testimony supported her allegations with respect to her injuries. In such a situation a presumption does not necessarily arise that other medical testimony would have been adverse to plaintiff. There could be a question as to whose duty it was to produce the absent witnesses. See "Virginia Jury Instructions," by Doubles, Emroch & Merhige, § 10.10, p. 64. Circumstances might warrant a similar instruction

in other cases but it was not appropriate under the evidence in the present case and should not have been given.

The judgment appealed from is reversed and the case remanded for a new trial on all issues.

*Reversed and remanded.*