# Richmond

## CLINTON W. NEELEY JR., ET AL. v. LAWRENCE EUGENE JOHNSON.

January 20, 1975.

Record No. 730849.

Present, All the Justices.

*Bernard S. Cohen (Cohen & Rosenblum,* on brief), for plaintiffs in error.

*Norman F. Slenker (Slenker, Brandt, Jennings & O'Neal,* on brief), for defendant in error.

Compton, J., delivered the opinion of the court.

Clinton W. Neeley, Jr., plaintiff, sued Lawrence Eugene Johnson, defendant, for damages as the result of personal injuries sustained on July 23, 1970, in Fairfax County, Virginia, when a stopped motor vehicle operated by the plaintiff was struck from the rear by another motor vehicle negligently driven by the defendant. The United States was added as a party plaintiff, and it asserted a claim against the defendant for the reasonable value of hospital care and treatment rendered to Neeley about seven months after the accident at the Veterans Administration Hospital in Salem, Virginia.

The defendant admitted that his negligence was the sole proximate cause of the accident. The issue of damages was tried to a jury which returned a verdict in favor of Neeley for $12,600 and denied the claim of the United States. The plaintiffs' motion to set aside the verdict was overruled, and the trial court entered judgment on the verdict. We granted the plaintiffs a writ of error limited to the consideration of three assignments of error.

The questions to be decided on appeal are whether the trial court erred in refusing to admit into evidence certain hospital records; in granting Instruction E offered by the defendant which set forth the adverse presumption resulting from the unexplained nonproduction of a material witness; and in refusing to grant Instruction 9 tendered by the plaintiff Neeley dealing with the collateral source rule.

We reverse and remand.

At the trial, the central issue of fact, of course, was the nature and extent of the plaintiff's injuries and whether such injuries resulted from the accident. Neeley claimed that the accident caused physical injury to his head, to the soft tissues of his neck and low back, and to his right hip and leg. He contended that during the period of over two and one-half years between the accident and trial, he had seen numerous doctors seeking relief from his pain, without success; and that because he was unable to sit at his desk for long periods of time or to drive a car free of pain, he was unable to continue his employment as an auditor for American Motor Inns, which required about 50,000 miles of

driving each year. He urged that because his physical condition failed to improve during the seven months following the accident, he became concerned about his family's financial security and that this anxiety caused him to suffer a "nervous breakdown" which was diagnosed as a depressive neurosis or reactive depression caused by the accident in question.

The defendant conceded that the plaintiff suffered some injury in the accident, but maintained that it was merely a "whiplash case" involving strains of the neck and lower back accompanied by a mild cerebral concussion, with symptoms from the strains being persistent for only six weeks to three months after the accident. This was supported by the testimony of Dr. Murphy, a neurosurgeon and neurologist who examined the plaintiff at the request of the defendant's attorney two days prior to trial. Murphy, the defendant's only medical witness, was of the opinion that the plaintiff's "mental disturbance" was not related to the accident.

The pertinent evidence shows that on the day of the accident, Neeley, then age 44 and a resident of Abingdon, Virginia, located over three hundred miles from the scene of the accident and place of trial, was in Northern Virginia on business. The accident occurred about 8:15 a.m. as the plaintiff was preparing to turn his vehicle into a service station. He stated he was rendered unconscious by the blow from the rear. Thereafter, he was carried by ambulance to the emergency room of the Alexandria Hospital where he was released in the late afternoon of that day after having been examined, treated by a Dr. Weaver, and funished a neck "brace" made with a towel.

The next day the plaintiff was driven to his Abingdon home and was treated for his accident injuries by Dr. Kuhnert, an orthopedic surgeon of Bristol, Tennessee, who fitted the plaintiff with a cervical collar and treated him a total of nine times from July 25, 1970, to April 6, 1971. The plaintiff stated that he failed to "get total relief" from the pain in his neck and back while in Dr. Kuhnert's care.

In November or December of 1970, Dr. Shaffer in Abingdon (his medical specialty, if any, is unclear in the record) treated the plaintiff for chest pain on two occasions. In December of 1970 and January of 1971, the plaintiff was treated by another doctor named Weaver, a neurosurgeon, at his office in Roanoke, Virginia.

On February 16, 1971, the plaintiff was admitted to the Veterans Administration Hospital in Salem, where he remained through March 26, 1971, except for an authorized fourteen-day absence. The cost of the care and treatment rendered to him and claimed by the United States was $1,392.00. The excluded hospital record in question shows that upon admission Dr. Wood, a psychiatrist on the hospital staff, made a diagnosis of depressive neurosis which was precipitated by the physical injury received in the accident and by the plaintiff's resultant inability to function in his job. Neeley's recorded medical history at the hospital revealed a 40 to 50 pound weight loss during the six months preceding his admission, loss of self-confidence, hallucinations, nervousness, financial strain, an attempt at suicide three weeks before admission, and "a continuing death wish." He was given medication, observed and discharged as improved.

Dr. Bowden, of Abingdon, who testified by deposition and stated that he limits his practice to internal medicine, had seen the plaintiff before the Salem hospitalization and helped to arrange the admission. He saw Neeley again on April 12, 1971, and found pain and limitation of motion in the plaintiff's neck and low back which, in his opinion, were caused by the accident.

In August of 1971, the plaintiff moved from Abingdon to Banner Elk, North Carolina, so that his wife and son could more readily find employment. Following the accident, he had been unable to return to his job where he was making $210 per week plus a car allowance of $25 per week. Being "desperate to put bread on the table some way," he worked part-time doing bookkeeping for an Abingdon construction company. This did not relieve the family's financial plight, hence the move to North Carolina.

Neeley was covered under an employee disability policy carried by American Motor Inns. The insurer required him to take, and it paid for, a complete physical examination in October of 1971, administered by Dr. Wiley, a general practitioner in Banner Elk, who also testified by deposition. In addition to making the examination, Dr. Wiley treated the plaintiff with analgesics and prescribed exercises to relieve the neck and low back symptoms.

There was evidence that after the examination by Dr. Wiley,

the plaintiff received several "treatments" to his neck, shoulders and hip "on various machines" by Dr. Sprigler, a chiropractor in Taylorville, North Carolina.

Thereafter, in December of 1971, the plaintiff was seen once for his complaints by Dr. Hulvey of Abingdon, an orthopedic surgeon, who prescribed a "traction device" which he used for relief of neck pain.

When asked why he saw so many different doctors, the plaintiff testified that he "was seeking relief from the pain and suffering and doing . . . everything possible to get back the recovery of [his] health so [he] could get back to supporting [his] family."

Dr. Bowden examined the plaintiff again in November of 1972 and he noted an abnormality in his posture. The patient was still having head, neck, back and hip pain and soreness in the hands. His condition was diagnosed at the time as chronic cervical and low back strain with some degenerative intervertebral disc disease, all as the result of the accident.

Less than three weeks before the trial, which commenced on February 15, 1973, the plaintiff was referred by his attorney to Dr. Pepper, a psychiatrist, and to Dr. Bortnick, a neurosurgeon, both of Alexandria.

Dr. Bortnick, who submitted a bill for "neurosurgical consultation," testified that although he had not seen the plaintiff as a patient before, he had prior knowledge of the plaintiff's "neurological problem" as the result of a telephone call made by the plaintiff about 12 months prior to his examination. The plaintiff had come to the Alexandria area and tried without success to see Dr. Bortnick, who had referred the plaintiff back to Dr. Weaver of Roanoke, "a very good qualified neurosurgeon in his area." At the time of his examination, Dr. Bortnick had medical reports upon the plaintiff's post-accident condition from Doctors Weaver, Khunert and Wiley and the Veterans Administration Hospital. He also had received a report from a Dr. Stein, who was a chiropractor.

Dr. Bortnick was of the opinion that the plaintiff had a chronic cervical and lumbar strain which was in the soft tissues of these areas of the back and that he would "have continued indefinite recurrences of his symptoms" if he tried to do a substantial amount of driving or if he sat at a desk for a long

period of time. Bortnick was of the further opinion that the plaintiff had "a real emotional reaction to his injury which is adding to his impairment" and that "[u]nderlying it all is a real injury to his neck and low back."

Dr. Pepper testified that the plaintiff suffered from a depressive neurosis as a result of the accident. Pepper had reviewed the Veterans Administration Hospital record, interviewed the plaintiff and his wife, and consulted with Dr. Bortnick.

There was testimony that the plaintiff had also been seen subsequent to the accident by Dr. Rivers at the VA Hospital, Dr. Campbell in Johnson City, Tennessee, and Dr. Haas "in Bristol." Rivers was described by the plaintiff "as being the doctor that came around on the floor once a day and when they brought your medication he would sit down at the table and talk with each patient and ask how they were getting along." Campbell had treated the plaintiff for a number of years for eye problems, but Neeley testified that the physician was unable to "connect up" his eye complaints to the accident sued upon. Prior to the Salem hospitalization, the plaintiff saw Haas, a psychiatrist, who talked to Neeley and his wife for about twenty minutes but rendered no other treatment.

As stated, only Doctors Bortnick, Pepper, Bowden and Wiley testified for the plaintiffs, the evidence of the latter two being presented by deposition.

The plaintiffs offered in evidence a photostatic copy of the entire record of the Veterans Administration Hospital dealing with Neeley's hospitalization through its custodian, who stated that the record was kept in the ordinary course of hospital business under his direction and supervision. The authenticity of the machine copy was not questioned by the defendant.

The trial court refused to admit the record when it was tendered on the first day of trial, then admitted it on the second day, but on the fourth and last day, after the plaintiffs' last rebuttal witness testified, excluded it after considering the contents of each page, upon the ground that "all matters set out in the hospital record [are] conclusions and opinions of the physician. . . ." Apparently the record was not examined by the jury.

The fifteen-page document is made up of handwritten and

typewritten notes recording matters of fact intermingled with expressions of opinion. Many of the entries are over the signature of Dr. Wood. It contains, *inter alia,* the patient's medical history, physical findings, progress in the hospital, treatment, and a diagnosis of depressive neurosis. It also includes reports of the radiologist, electroencephalographer, and physical therapist. It contains notes made contemporaneously with the event, such as handwritten doctors' progress notes recording daily the patient's condition. It also contains notes made some time after the event, i.e., a typewritten summary of the case from admission to discharge, which was apparently dictated almost two months after admission and two weeks after discharge.

The plaintiffs contend the whole hospital record should have been admitted under the business records exception to the hearsay rule. They rely mainly upon *Dalton* v. *Johnson,* 204 Va. 102, 129 S.E.2d 647 (1963) and cite cases from other jurisdictions to support the argument that once the *reliability* of a hospital record is proved, as was done in this case, the entire record becomes admissible. But the plaintiffs misread *Dalton* and misconstrue the rule as it is applied in Virginia.

As a recognized exception to the hearsay rule, we have adopted the modern Shopbook Rule, allowing in given cases the admission into evidence of verified regular entries without requiring proof from the original observers or record keepers. *duPont Co.* v. *Universal Moulded Prod.,* 191 Va. 525, 567, 568, 62 S.E.2d 233, 252 (1950). This exception has been generally restricted to facts or events within the personal knowledge and observation of the recorder to which he could testify if called as a witness. *Boone* v. *Commonwealth,* 213 Va. 695, 697, 194 S.E.2d 689, 690 (1973). We reject the plaintiffs' argument and refuse to extend the exception to include opinions and conclusions of physicians or others recorded in hospital records.

*Dalton* fails to support the plaintiffs' position. In that case, the trial court permitted the defendant to introduce into evidence hospital records covering the plaintiff's hospitalizations in 1941, 1955, 1956 and 1959. The issue to be decided by the jury was the extent of the plaintiff's injuries resulting from a 1959 accident. Under the facts of *Dalton,* we held that the records were properly admitted because the actions of the plaintiff "both before and during the trial were such that had [the records] not

been introduced in evidence the jury would have been completely misled." 204 Va. at 104, 129 S.E.2d at 648. The unusual circumstances present in *Dalton* are not involved here.

Accordingly, we hold that the trial court in this case properly refused to admit the record as a whole. However, portions of the document are admissible. Since the case will be remanded for a new trial, the trial court should receive those parts of the record into evidence which qualify under the Shopbook Rule, assuming they are otherwise properly admissible.

■ Over the plaintiffs' objection, the trial court granted Instruction E as follows:

> "The Court instructs the jury that the unexplained failure of a party to produce a material witness raises a presumption that the testimony of such witness would have been adverse to the party thus failing to produce him. The presumption may be rebutted by the party explaining the absence of the witness and showing that he has been unsuccessful in procuring his presence despite diligent efforts made in good faith to produce the witness."

This instruction was directed to the failure of the plaintiffs to call as witnesses physicians who treated Neeley following the accident. He was seen during the period by at least fifteen physicians, whereas only four testified.

The plaintiffs contend that the presumption set out in the instruction does not apply in this case because, first, the evidence from the physicians who did testify represented "a fair balance of medical expert opinion" making the testimony of the other physicians merely cumulative and corroborative, and, second, the plaintiffs had no duty to produce the absent physicians since they were equally available to the defendant.

The defendant argues that the instruction was fully justified under the facts. He directs attention to Neeley's failure to present the evidence of the Doctors Weaver and of Doctors Kuhnert, Shaffer, Campbell, Wood, Hulvey, Sprigler, Stein, Rivers, "and various other doctors in the Veterans Administration Hospital." He notes that in addition to Dr. Bortnick, Neeley only presented the testimony of Doctors Wiley and Bowden, "who had seen him a combined total of five or six times," and of Dr. Pepper, who was "obtained by the plaintiffs'

attorney for purpose of testimony at trial" and who saw Neeley for the first time within three weeks of the trial.

The defendant further argues that the absent doctors' testimony would not be cumulative because "[m]ost, if not all of the physicians that Neeley had seen, pursued a different area of specialty and . . . Neeley saw them for apparently divergent symptoms, most of which he attributed to the auto accident in question." He contends there were no medical reports from many of these physicians "so there was no way really that court or counsel could tell whether their testimony would be cumulative or otherwise." He further argues that since the plaintiffs had the burden of proof, no duty rested upon the defendant to bring "the doctors to trial." .

Prejudicial error was committed by granting the instruction under the facts of this case. Instruction E is a statement of the settled rule that the unexplained failure of a party to call an available material witness gives rise to an inference, sometimes called a presumption, that the testimony of such absent witness would be adverse to such party. *Williams* v. *Vaughan,* 214 Va. 307, 310, 199 S.E.2d 515, 517 (1973); *Altavista Cotton Mills* v. *Lane,* 133 Va. 1, 13-14, 112 S.E. 637, 640-41 (1922). *See generally* McCormick on Evidence 656-59 (2nd ed. 1972). *See also* Annot., 5 A.L.R. 2d 893; Annot., 135 A.L.R. 1375. A caveat not directly involved here, but essential to a complete statement of the rule, is that no presumption arises against a defendant for failure to produce witnesses until the plaintiff carrying the burden of proof has made out a *prima facie* case. *Brown* v. *Parker,* 167 Va. 286, 290, 189 S.E. 339, 341 (1937); *Hutcheson* v. *Savings Bank of Richmond,* 129 Va. 281, 290, 105 S.E. 677, 680 (1921).

The essential elements of the rule, which must be supported by the evidence to justify an instruction thereon, are availability and materiality of the witness. *Availability* may be translated as the power of the party to produce. 2 Wigmore on Evidence § 286 at 166 (3rd ed. 1940) [hereinafter cited as Wigmore]. Probable availability rather than actual availability may be sufficient depending upon the state of the evidence in each case. *Grady* v. *Collins Transportation Company,* 341 Mass. 502, 506, 170 N.E.2d 725, 727 (1960). The lack of power or nonavailability may be due to the person's absence from the jurisdiction, his illness, the party's ignorance of the whereabouts of the witness, the person's testimony being inadmissible, or other like circumstances.

Wigmore, § 286 at 166. *e.g., One Inter'n'l Truck* v. *Commonwealth*, 159 Va. 1010, 1013, 167 S.E. 376, 377 (1933) (inference not applicable when witness out of jurisdiction and prevented from attending trial by a death in his family). "Available" is equated to "control" in some cases, that is, the witness is available if he "is in such relationship with the party that it is likely that his presence could be procured." *Grady* v. *Collins Transportation Company, supra,* 341 Mass. at 505, 170 N.E.2d at 726. Nonavailability may be explained and the inference, or presumption, rebutted when the litigant explains the absence. *McGehee* v. *Perkins,* 188 Va. 116, 126, 49 S.E.2d 304 (1948). Moreover, when the person is equally available to both parties, "the failure to produce is *open* to an inference *against both parties,* the particular strength of the inference against either depending" on the facts and circumstances of each case. Wigmore § 288 at 169-71.

*Materiality* in this context means that the person's testimony has "a certain or probable bearing on the proper determination of" the case. Webster's Third New International Dictionary 1392. The testimony of a possible witness which is "for any reason comparatively *unimportant,* or *cumulative,* or *inferior* to what is already utilized, might well be dispensed with by a party on general grounds of expense and inconvenience, without any apprehension [that the inference would be drawn]." Wigmore § 287 at 168. *See Robinson* v. *Commonwealth,* 207 Va. 66, 69, 147 S.E.2d 730, 732 (1966) (presumption held not applicable where Commonwealth failed to call every possible witness in proving its case); *Oliphant* v. *Snyder,* 206 Va. 932, 936-37, 147 S.E.2d 122, 126 (1966) (instruction on presumption properly refused in motor vehicle accident case when defendant driver failed to call his 10-year-old son who was a passenger in the vehicle); *Barnette* v. *Dickens,* 205 Va. 12, 16, 135 S.E.2d 109, 113 (1964) (instruction on failure of plaintiff to produce three of her attending physicians at trial of personal injury case improper when she called two of her attending physicians); and *Vann* v. *Harden,* 187 Va. 555, 567, 47 S.E.2d 314, 320 (1948) (presumption not applicable in medical malpractice case when plaintiff failed to call one attending physician since three physicians testified with little or no variance in their testimony).

When the foregoing criteria are focused upon the facts under consideration, it is apparent that Instruction E was erroneous.

In the first place, the evidence failed to show that a number of the absent doctors were *available*. This is illustrated in the defendant's brief where it is said that "Dr. B. S. Wood and Dr. Rivers, as well as other physicians at the Veterans Administration Hospital were not called as witnesses nor was there any evidence adduced showing whether they were alive or dead, in or out of the jurisdiction, available or unavailable." It is elementary that an instruction should not be given which is unsupported by the evidence. The jury under the authority of Instruction E in its unrestricted form could have improperly applied the presumption to *all* the absent doctors, including those who may have been out of the jurisdiction, dead, or ill. Availability will not be presumed from evidence which is silent on the question. If the evidence of the plaintiff does not disclose availability, then a defendant, to be entitled to the instruction, must present facts tending to show such availability.

In the second place, the evidence failed to show the *materiality* of many of the absent doctors. Moreover, the evidence clearly indicated that the testimony of many of the physicians was not material but was merely cumulative and repetitious. For example, in its unrestricted form, the instruction and presumption applied to Dr. Rivers who, according to the evidence, "came around on the floor [in the VA Hospital] once a day and . . . would sit down . . . and talk with each patient and ask how they were getting along." It also applied to Dr. Haas, the psychiatrist who talked to Neeley and his wife for twenty minutes and rendered no other treatment. In addition the instruction applied to Dr. Campbell who had treated Neeley's eyes for a number of years and who examined him following the accident; however, Neeley clearly stated to the jury that no eye complaint was related to the accident. The foregoing examples demonstrate cumulative or unimportant evidence to which the presumption does not apply. Contrary to the defendant's argument, the mere fact that physicians of different specialties treat the plaintiff for "divergent" symptoms does not necessarily render the testimony of each material.

For the foregoing reasons, the instruction in the form given was improper. It should have been restricted in its application to those doctors who were available and whose testimony was material. Contrary to the plaintiffs' contention, the mere fact that several physicians seem to represent a "fair

balance" of medical opinion for the plaintiff does not necessarily render other medical opinion cumulative. Under this evidence, Dr. Kuhnert's testimony was material and noncumulative, assuming he was available. He treated Neeley regularly for a period of about eight months immediately following the accident and, considering the nature of Neeley's claimed injuries, his testimony had a "certain or probable bearing on the proper determination of the case."

■ Moreover, we do not agree with Neeley that all of his doctors were "equally available" to the defendant. In passing upon the question of equal availability, the trial judge must consider the relationship of the witness and the party. This requires evaluation of such matters as the "party's superior means of knowledge of the existence and identity of the witness, [and] of the testimony that might be expected from him in light of his previous statements, if any, with reference to the case . . . ." Wigmore § 288 (Supp. 1972). See Oliphant v. Snyder, supra, 206 Va. at 937, 147 S.E.2d at 126; Barnette v. Dickens, supra, 205 Va. at 16, 135 S.E.2d at 113. In this case, for example, Dr. Kuhnert was not equally available to the defendant. He was one of Neeley's main treating physicians and Neeley had a superior opportunity to know the particulars of this testimony, the defendant ordinarily being deterred in this regard by the physician-patient privilege. Contra, Vann v. Harden, supra, 187 Va. at 567, 47 S.E.2d at 320 (dictum).

■ The plaintiffs complain of the trial court's refusal to grant Instruction 9 which would have told the jury that the defendant is liable for such part of the damages which may have been reimbursed to Neeley from a collateral source "such as sick leave. [sic] or disability payments." This instruction was properly refused. When testifying, Neeley volunteered the fact that his full salary was continued for six to eight weeks following the accident and during his incapacity. He also referred to a "disability policy," which his employer carried, under which he was covered. Having injected this irrelevant evidence into the case, he was not entitled to Instruction 9, and it was properly refused.

For the error of the trial court in granting Instruction E, the judgment of the trial court will be reversed, the jury verdict will be set aside, and the case will be remanded for a new trial of the plaintiffs' claims, restricted to the issue of damages only.

*Reversed and remanded.*