**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

VRCOMPLIANCE LLC; EYE STREET
SOLUTIONS LLC,

        *Plaintiffs-Appellants,*

v.

HOMEAWAY, INC.;
HOMEAWAY.COM, INC.;
VRBO.COM, INC.;
VACATIONRENTALS.COM, INC.,

        *Defendants-Appellees.*

No. 12-1143

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Liam O'Grady, District Judge.
(1:11-cv-01088-LO-TCB)

Argued: March 20, 2013

Decided: May 24, 2013

Before WILKINSON, SHEDD, and DUNCAN,
Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the
opinion, in which Judge Shedd and Judge Duncan joined.

**COUNSEL**

**ARGUED:** M. Keith Blankenship, EYE STREET SOLUTIONS, LLC, Leesburg, Virginia, for Appellants. Adam J. Kessel, FISH & RICHARDSON, PC, Boston, Massachusetts, for Appellees. **ON BRIEF:** James A. Allen, GENERAL COUNSEL, PC, McLean, Virginia, for Appellants. Ahmed J. Davis, FISH & RICHARDSON, PC, Washington, D.C.; William Tommy Jacks, FISH & RICHARDSON, PC, Austin, Texas, for Appellees.

---

**OPINION**

WILKINSON, Circuit Judge:

The district court stayed appellants' action pending the resolution of an earlier parallel state lawsuit filed by appellees. Appellants' action was based on a "mixed" complaint, one raising both declaratory and nondeclaratory claims. The parties spend a great deal of energy arguing over whether the decision to stay a mixed action is governed by the standard articulated in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813 (1976), which permits stays only in "exceptional circumstances," or the standard articulated in *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491, 495 (1942), and *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 289 (1995), which affords district courts broader discretion to stay declaratory actions in deference to parallel state proceedings. We think, however, that regardless of the standard applied, the district court did not abuse its discretion. *See Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 464 (4th Cir. 2005). One consideration in this case looms above the others—namely, that appellants had every opportunity to procure a federal forum by removing appellees' first-filed state suit rather than by bringing a separate federal action in an entirely separate federal district.

I.

A.

Rather than book hotel rooms, many travelers now rent private residences for accommodation during their vacations. Appellee HomeAway, Inc. owns and operates a number of websites that facilitate such rentals. The websites, including HomeAway.com and VRBO.com, post rental advertisements by homeowners, whom prospective renters can then contact directly to make reservations.

Many localities have found that these vacation rentals deprive them of significant tax revenue. Whereas hotels almost always pay the taxes that localities assess on room rentals, private homeowners frequently fail to do so, whether out of ignorance of the law or purposeful evasion. To combat such delinquency, some localities have turned to companies like appellant Eye Street Solutions LLC ("Eye Street"), which has developed computer software designed to identify homeowners who neglect to pay taxes when they rent out their homes. Eye Street claims the software as a trade secret, and the parties dispute exactly how it works, but in general, it uses various data to identify the owners of properties advertised on websites like HomeAway's and then determines whether the owners have paid the requisite local rental taxes. Eye Street has licensed its software to appellant VRCompliance LLC, which, in turn, uses the software to conduct tax-compliance investigations on behalf of localities, including those belonging to the Colorado Association of Ski Towns ("CAST").

Believing that Eye Street's software was impermissibly accessing its websites, HomeAway sent a letter, on December 10, 2010, to CAST and Eye Street, in which it demanded that CAST's members cease using the software. Specifically, HomeAway asserted that CAST's members were using Eye Street's software to "scrape" HomeAway's websites—that is, to access and copy from the websites' computer servers infor-

mation that identified the homeowners who posted rental advertisements. Such access, HomeAway contended, violated the websites' terms and conditions of use and thus constituted unlawful interference with contractual relations as well as a deceptive and unfair trade practice, in violation of Colorado law. Additionally, because HomeAway claimed the lists of homeowners who posted advertisements on its websites to be copyrighted and trade secrets, it contended that the localities' actions also violated federal copyright law and the Colorado Uniform Trade Secrets Act, Colo. Rev. Stat. §§ 7-74-101 to -110.

On September 28, 2011, HomeAway sent a second letter to CAST, copying the organization's members, as well as a separate letter to Eye Street and VRCompliance. Reiterating the allegations from the first letter, the second round of letters threatened Eye Street, VRCompliance, and CAST and its members with legal action unless, by October 5, 2011, they stopped "scraping" data from HomeAway's websites and turned over any data they had already obtained.

B.

On October 3, 2011, HomeAway filed suit against Eye Street, VRCompliance, and CAST in the District Court of Travis County, Texas. Its complaint asserted the following Texas state-law claims: breach of contract; misappropriation of trade secrets; violations of the Texas Theft Liability Act, Tex. Civ. Prac. & Remd. Code Ann. §§ 134.001-.005; conversion; and constructive trust. The defendants, in turn, later asserted various state-law counterclaims, including tortious interference with existing and prospective contractual relations; defamation; business disparagement; and violations of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code Ann. §§ 17.47, .58, .60, .61.

Eye Street did not attempt to remove HomeAway's Texas suit to federal district court. Instead, on October 6, 2011, it

filed its own action against HomeAway and its subsidiaries in the U.S. District Court for the Eastern District of Virginia.* Eye Street's complaint sought declaratory judgments that (1) it was not committing the various state common-law and statutory violations asserted in HomeAway's Texas complaint; (2) it was not violating the federal Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030; and (3) it was not infringing any of HomeAway's copyrights and thus was not violating federal copyright law. It also raised nondeclaratory Virginia state-law claims for defamation; tortious interference with existing and prospective contractual relations; and violations of the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196 to -207—claims for which it sought compensatory and punitive damages.

After HomeAway moved to dismiss Eye Street's action for improper venue or, alternatively, to transfer venue to the U.S. District Court for the Western District of Texas, the district court stayed the action pending the resolution of HomeAway's Texas lawsuit. Eye Street challenges the propriety of the stay in this appeal.

## II.

The district court based its ruling on our decision in *United Capitol Insurance Co. v. Kapiloff*, 155 F.3d 488, 493-94 (4th Cir. 1998), which identified factors for district courts to consider in deciding whether to stay declaratory actions in deference to parallel state proceedings under *Brillhart/Wilton*. In reviewing its ruling for abuse of discretion, we bear in mind that, as with any multi-factor test governing the exercise of federal jurisdiction, a district court should not treat the factors as a "mechanical checklist," but rather should apply them

---

*VRCompliance, but not CAST, joined Eye Street as a plaintiff in the federal action and thus is also an appellant here. For ease of reference, however, we hereinafter refer to VRCompliance and Eye Street collectively as "Eye Street."

flexibly in light of the particular circumstances of each case. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

First, the district court found that "Texas has a strong interest in deciding the issues of this case in its courts." J.A. 238. All of Eye Street's claims relate to a single general question: whether appellants violated the terms and conditions of use for HomeAway's websites. As the court noted, because the terms and conditions contain Texas choice-of-venue and choice-of-law provisions, Texas has a strong interest in having its courts take a first stab at resolving this question.

Second, the district court concluded that "the Texas State Court will likely 'resolve the issues more efficiently' than this court." J.A. 240 (quoting *Kapiloff*, 155 F.3d at 494). In general, where two parallel suits are pending in state and federal court, "the first suit should have priority, absent the showing of balance of convenience in favor of the second action." *Ellicott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974) (internal quotation marks omitted). As the district court noted, although the period between the two actions was short, Eye Street filed its federal action after HomeAway filed its Texas action. While Eye Street claims to have been unaware of the Texas action at the time, it still had known that such an action was imminent, given the threat in HomeAway's final cease-and-desist letter. Nor have the parties indicated that the Texas action has been stayed, suggesting that that action has progressed further, and promises to conclude more promptly, than the federal one.

The district court noted, moreover, that "an inquiry into 'the scope of the pending state court proceeding' convinces the Court the suit 'can better be settled in the proceeding pending before the state court.'" J.A. 240-41 (quoting *Brillhart*, 316 U.S. at 495). The Texas suit includes not only all the parties in the federal suit, but also CAST, thus promising a more comprehensive resolution. *See Kapiloff*, 155 F.3d at 494

(finding that the state court action "included more parties than did the federal action, suggesting that the same action would be more efficient in resolving all interested parties' rights").

Eye Street's federal action also "explicitly mirror[s]" most of the claims in the Texas suit. J.A. 240. In particular, Eye Street's state-law declaratory claim is explicitly styled as a general defense to HomeAway's Texas claims, while its non-declaratory claims merely recast its Texas counterclaims in terms of Virginia law. Eye Street will thus have an opportunity in the Texas proceeding to litigate all the offensive claims against HomeAway that it sought to litigate in the district court. To be sure, the Texas action does not include Eye Street's two federal-law declaratory claims, nor could it possibly include the copyright claim, which is subject to exclusive federal jurisdiction. *See* 28 U.S.C. § 1338(a). But the core of Eye Street's action is its state-law declaratory claim, and its federal-law declaratory claims turn on the very same factual questions—questions that, for all the reasons noted, the Texas court can more efficiently resolve.

Third, because "the Texas and Virginia Suits involve 'overlapping issues of fact [and] law,'" the district court concluded that "permitting this action to go forward would result in unnecessary entanglement between the federal and state court systems." J.A. 241 (alteration in original) (quoting *Kapiloff*, 155 F.3d at 494). The risk of such entanglement is especially acute where the same issues being litigated in federal court "are already being litigated by the same parties in the related state court action[ ]," since any factual determinations first made in one proceeding would likely have preclusive effect in the other, thus "frustrat[ing] the orderly progress of [the other] proceeding[ ] by leaving the . . . court with some parts of [the] case foreclosed from further examination but still other parts in need of full scale resolution." *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 379, 377 (4th Cir. 1994) (internal quotation marks omitted). This procedural maze, of course, perfectly describes the instant case. The sim-

ilarities between the Texas and federal actions are, as the district court aptly put it, "unambiguous." J.A. 241. Consequently, the district court would almost certainly have to accord any prior factual findings by the Texas court preclusive effect, a prospect made all the more likely by the fact that the Texas suit was filed first and has progressed further.

### III.

The district court's foregoing discussion is all well and good, and we in no sense discount it. However, one consideration looms above the rest and would justify the stay under either *Brillhart*/*Wilton* or *Colorado River*. Thus, although "[o]ur jurisprudence suggests that, in a 'mixed' complaint scenario, the *Brillhart*/*Wilton* standard does not apply, at least to the nondeclaratory claims. . . . [w]e need not express a definitive view on this point" because even if we applied the heightened *Colorado River* standard, "the result would not change." *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 211 (4th Cir. 2006). That is, appellants' procedural gamesmanship renders us unable to say that the district court abused its discretion under either governing standard.

Crucially, Eye Street insisted on proceeding with its federal action, rather than seeking to remove HomeAway's action to the appropriate federal district court in Texas, even after HomeAway indicated it would not oppose removal. "At numerous points," the district court noted, HomeAway "evinced its assent to removal of the Texas Suit. And at no point did [Eye Street] argue removal of the Texas Suit would have been improper." J.A. 243 n.11. Eye Street thus desired not a federal forum per se, but one that would approach the dispute on its terms and potentially preempt HomeAway's alternative framing of the issues in the Texas suit. This, of course, is precisely the kind of "procedural fencing" that federal case law aims to forestall. *Kapiloff*, 155 F.3d at 494.

Congress designed the federal removal statute, 28 U.S.C. § 1446, as the primary avenue for obtaining federal court

review of claims already pending in a state court. Under the statute, a defendant in an action pending in state court may seek to remove the action only to the federal district court "for the district and division within which such action is pending." *Id.* § 1446(a). But if the defendant could gain a federal forum in any federal district court with personal jurisdiction over the state court plaintiffs simply by filing a federal action recasting the claims against it as declaratory claims, then the removal statute's comprehensive jurisdictional scheme would be supplanted with a regime of forum shopping. District courts enjoy discretion to consider a litigant's deliberate decision to forego removal as a reason to stay its federal declaratory action.

*Colorado River* does not counsel the contrary. That decision embodies the notion that, barring "exceptional circumstances," litigants should have access to a federal forum where Congress has afforded them one. 424 U.S. at 813. This principle is especially salient where, as here, some of a litigant's claims are based on federal law. But in *Colorado River* all the federal claims were nondeclaratory. Here, all of Eye Street's federal claims are declaratory, where the breadth of the district court's discretion reflects the permissive language in the Declaratory Judgment Act itself. *See* 28 U.S.C. § 2201 (providing that a district court "*may* declare the rights and other legal relations of any interested party seeking such declaration" (emphasis added)). In any event, Eye Street has always had access to a federal forum for all its claims, federal and state, via removal of HomeAway's Texas suit to federal district court. Because Eye Street decided voluntarily to forego the opportunity to litigate in one federal forum, the concerns underlying *Colorado River* are now mitigated as it seeks to litigate in another.

Moreover, as the district court emphasized, because it issued a stay rather than dismissing Eye Street's action outright, it has by no means "thwart[ed] . . . Eye Street's access to a federal forum for resolution of [its] federal claims or

additional claims that properly invoke the [district court's] jurisdiction." J.A. 243 n.11. The Supreme Court has counseled this exact course in cases like the instant one. *See Wilton*, 515 U.S. at 288 n.2 ("We note that where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy.").

Of course, the district court issued the stay based in part on the belief that the Texas court is likely to answer the central questions in the dispute, including those underlying Eye Street's federal declaratory claims. But insofar as this means that Eye Street is unlikely to have a chance to litigate those questions in federal court, it yet again has only itself to blame, for it deliberately chose not to remove HomeAway's Texas action. A party should not be heard to complain that it lacks a federal forum when such deprivation stems from its own apparent procedural gamesmanship.

We thus conclude that the district court did not abuse its discretion in staying Eye Street's action. Given the strong case for a stay under the *Kapiloff* factors and Eye Street's deliberate choice to forego removal, the court's decision would be an appropriate exercise of discretion under either *Brillhart*/*Wilton* or *Colorado River*.

## IV.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*