**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-1228

MICHAEL LEWIS SCOTT,

              Plaintiff - Appellant,

       v.

WATSONTOWN TRUCKING CO. INC.; WILLIAM A. MILLER, III,

              Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  David Novak, Magistrate Judge.  (3:12-cv-00176-DJN)

Submitted:  June 17, 2013                 Decided:  July 18, 2013

Before TRAXLER, Chief Judge, AGEE, Circuit Judge, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

John R. Garza, Bradley N. Kehr, GARZA, REGAN & ASSOCIATES, P.C., Rockville, Maryland, for Appellant.  John K. Messersmith, IV, James H. Revere, III, KALBAUGH, PFUND & MESSERSMITH, P.C., Richmond, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Michael Lewis Scott brought negligence claims in the district court against Watsontown Trucking Company ("Watsontown Trucking") and William A. Miller (collectively, "Defendants"). In his complaint, Scott alleged that Miller's negligent operation of a Watsontown Trucking vehicle resulted in a collision with Scott in which Scott suffered injuries. At trial, Scott failed to testify on his own behalf, and the district court provided the jury with a "missing witness" instruction, over Scott's objection.[1] The jury returned a verdict of no liability, and after denying Scott's motion for a new trial, the district court entered judgment in favor of Defendants. Scott now appeals that judgment. For the following reasons, we affirm.

I.

Although the parties dispute many of the material facts in this case, it is undisputed that on July 20, 2010, Miller, a Watsontown Trucking employee, was operating a tractor trailer

---

[1] By the parties' consent, a magistrate judge presided over all aspects of this matter. See 28 U.S.C. § 636(c)(1). All references to "the district court" in this opinion refer to the magistrate judge.

2

owned by Watsontown Trucking.[2]  As Miller was making a left turn from Broad Street onto Parham Road in Richmond, Virginia, he collided with a motorcycle driven by Scott, who was proceeding southbound on Broad Street.  Scott suffered personal injuries as a result of the accident.  As the district court succinctly explained, the dispute at trial "boil[ed] down to whether . . . Miller had a green light when he turned left from Broad Street onto Parham Road and if not, whether [Scott] acted with contributory negligence."  (J.A. 606.)

Scott filed a complaint against Defendants in the United States District Court for the Eastern District of Virginia.[3]  In his complaint, Scott brought various negligence claims arising out of the vehicle accident and sought damages.  Miller and Watsontown Trucking answered, and the case proceeded to trial by jury.

Prior to trial, Scott, believing that Miller would not testify, requested that the court provide the jury with Virginia Model Jury Instruction Civil No. 2.080, which would permit the

---

[2] Based on the jury's verdict, we view the facts in the light most favorable to the prevailing party, Defendants.  See United States v. Cone, 714 F.3d 197, 201 n.1 (4th Cir. 2013).

[3] Because the parties to the action were diverse and the amount in controversy exceeded $75,000, the district court properly exercised diversity jurisdiction over Scott's personal injury claim.  See 28 U.S.C. § 1332.

3

jury to infer from the unexplained failure to call an important witness that the witness' testimony was not favorable to the party who failed to call the witness (referred to hereinafter as the "missing witness" instruction). Although the court denied the request, Miller ultimately testified at trial.

Also prior to trial, Scott's counsel tendered witness lists to the court that indicated Scott would be called as a witness, and the district court itself labored under the belief that Scott would testify at trial. Only near the end of trial did counsel for Scott finally inform the court that Scott would not be taking the witness stand. Indeed, Scott never even appeared in the courtroom during the proceedings.

During trial, Scott (through counsel) elicited testimony from one of Scott's physicians, Dr. Steven Macedo ("Dr. Macedo"), who averred that he advised Scott not to attend the trial because protracted sitting would cause his chronic pain (as a result of injuries incurred during the collision in question) to "spike." Dr. Macedo did not, however, explain whether he advised Scott not to testify, or otherwise opine on the advisability of Scott testifying at trial.[4]

---

[4] Indeed, Scott was deposed prior to trial, and there is no indication in the record that he was unable to sit for the length of his deposition. Scott did not introduce any portion of the deposition into evidence, and the contents are only in the record pursuant to a post-trial order of the district court.

On learning that Scott would not testify, the district court asked counsel for Scott whether counsel would be able to accept a subpoena on Scott's behalf, compelling him to testify the next day. Counsel indicated that he could not accept service of a subpoena, and that in any event, a subpoena would be untimely pursuant to the local rules of the Eastern District of Virginia.

When Scott failed to testify or make himself amenable to a subpoena, Defendants requested that the jury be given the same missing witness instruction which Scott had proposed earlier. The district court initially declined to give the instruction, but sua sponte reconsidered its decision that evening. Prior to the district court's charge conference, the court provided the parties with draft jury instructions, including the missing witness instruction. Scott objected to the instruction, which was overruled on the basis that Scott offered evidence about his recollection of the accident and, by calling Dr. Macedo, Scott placed his ability to attend the trial in controversy. The court therefore gave the following instruction in charging the jury:

> Let's talk . . . about the unexplained failure to produce an important witness. If you believe that a party, without explanation, failed to call an available witness who has knowledge of necessary and material facts, you may presume that witness'

5

testimony would have been unfavorable to the party who failed to call the witness.[5]

(J.A. 382.)

The jury returned a special verdict, specifically finding that Scott failed to prove by a preponderance of the evidence that Miller was negligent. The jury never reached the question, therefore, of whether Scott was contributorily negligent, and never considered damages.

Scott then moved for a new trial pursuant to Federal Rule of Civil Procedure 59. The district court held a hearing on the motion before denying it by written opinion. The court concluded that Scott, who had initially requested a missing witness instruction as to Miller, could not later object when the court gave an identical instruction after Scott failed to testify. Moreover, the court expressed considerable concern that it had been misled by "gamesmanship" on the part of Scott's counsel, and again observed that Scott had placed the matter of his absence in controversy by introducing testimony from Dr. Macedo. (J.A. 614.)

The court then entered judgment in favor of Defendants. Scott noted a timely appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

---

[5] The district court's missing witness instruction is identical to Virginia Model Jury Instruction Civil No. 2.080.

6

## II.

Scott raises myriad issues on appeal, but at bottom, he simply assigns error to the district court's decision to give a missing witness instruction, and its subsequent decision denying Scott's motion for a new trial. Finding no error in either respect, we affirm.

We review the court's jury instructions for abuse of discretion. See A Helping Hand, LLC v. Baltimore Cnty., Md., 515 F.3d 356, 370 (4th Cir. 2008). Of course, "[a]n error of law constitutes an abuse of discretion." Id. The "judgment will be reversed for error in jury instructions," however, "only if the error is determined to have been prejudicial, based on a review of the record as a whole." Abraham v. Cnty. of Greenville, S.C., 237 F.3d 386, 393 (4th Cir. 2001) (quotation marks omitted). Similarly, we review the denial of a motion for a new trial under Rule 59 for abuse of discretion. Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 242 (4th Cir. 2009).

## III.

In this diversity action, we apply the substantive law of the forum state, Virginia. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Before considering whether the legal elements for a missing witness instruction were met under

7

Virginia law, we observe at the outset that "[b]ecause we recognize that an aura of gamesmanship frequently accompanies requests for missing witness charges, we afford district judges considerable discretion in deciding when they should and should not be given." United States v. Gaskin, 364 F.3d 438, 463 (2d Cir. 2004) (internal citation and quotation marks omitted); accord VRCompliance LLC v. HomeAway, Inc., 715 F.3d 570, 575 (4th Cir. 2013) ("[A]ppellants' procedural gamesmanship renders us unable to say that the district court abused its discretion.").

In this case, we find significant that the district court was confronted with considerable gamesmanship throughout the course of the litigation below. As the court observed,

> the gamesmanship here was not limited only to [Scott] seeking the instruction, then objecting to the same instruction when Defendants sought it. . . . [Scott's] counsel led the Court to believe that [Scott] was going to testify and, importantly, gained a litigation advantage from that misdirection. And after [Scott's] counsel finally made clear that [Scott] would not testify and defense counsel requested the missing witness instruction, the Court sought to cure the situation by inquiring whether [Scott's] counsel would accept service of a defense subpoena for [Scott's] testimony the next day, which [Scott's] counsel rejected. [Scott's] counsel also indicated that a request for a subpoena at that time was untimely, which was accurate. Consequently, [Scott's] challenge to the missing witness instruction must be viewed within the context of his counsel's gamesmanship.

(J.A. 614 (internal citations omitted).)

In this case, the able magistrate judge who presided over the trial was able to evaluate, first hand, Scott's counsel's actions, and fashion an appropriate remedy. The court noted that Scott's counsel asked for, and later objected to, the missing witness instruction, "misdirect[ed]" the court as to whether Scott himself would testify, and thwarted the court's initial attempts to amicably resolve the missing witness dispute by subpoenaing Scott to testify. (Id.) Under these circumstances, we cannot say that the district court abused its considerable discretion in giving the missing witness instruction.

Out of an abundance of caution, however, we will briefly analyze whether, as a matter of Virginia law, the elements were met for the giving of a missing witness instruction. As the Supreme Court of Virginia has explained, the missing witness instruction is a "statement of the settled rule that the unexplained failure of a party to call an available material witness gives rise to an inference, sometimes called a presumption, that the testimony of such absent witness would be adverse to such party." Neeley v. Johnson, 211 S.E.2d 100, 107 (Va. 1975). The missing witness instruction has two elements: availability and materiality. See id.

> Availability may be translated as the power of the party to produce. Probable availability rather than actual availability may be sufficient depending upon

9

the state of the evidence in each case. The lack of power or nonavailability may be due to the person's absence from the jurisdiction, his illness, the party's ignorance of the whereabouts of the witness, the person's testimony being inadmissible, or other like circumstances. "Available" is equated to "control" in some cases, that is, the witness is available if he "is in such relationship with the party that it is likely that his presence could be procured." Nonavailability may be explained and the inference, or presumption, rebutted when the litigant explains the absence.

Id. (internal citations omitted).

Scott first argues that the district court improperly placed the burden on him to show that he was unavailable and his testimony immaterial.[6] Rather, he argues, the burden should have been placed on Defendants.

Our review of the record, however, belies Scott's assertion. We are unable to identify where in the record the court improperly assigned the burden to show availability and materiality. The discussion cited in Scott's brief contains no mention of burdens, and we are unable to discern where any alleged error occurred. More to the point, however, to the

_____

[6] Scott argues, as a threshold matter, that this Court should abrogate or abandon the missing witness instruction as no longer appropriate. As this argument was not raised in the district court, it is deemed waived and we will not consider it for the first time in this appeal. See Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993) (issues raised for first time on appeal are considered waived absent exceptional circumstances).

10

extent that the district court did misallocate the burdens, Scott cannot demonstrate prejudice.

The allocation of burdens is subject to harmless error review. See Belk v. Charlotte-Mecklenburg Bd. of Educ., 269 F.3d 305, 328 (4th Cir. 2001) (en banc) ("[B]ecause the district court's findings, which were based on the court's weighing of all of the relevant evidence presented at trial, would have yielded the same conclusion under a proper assignment of the burden of proof, any error with regard to the burden of proof is harmless."). For the reasons explained below, the district court had ample evidence that Scott was available as a witness only to his own cause, and his testimony was material.

It is clear that, as the plaintiff, Scott was available to testify on his own behalf. See Neeley, 211 S.E.2d at 107 ("[T]he witness is available if he 'is in such relationship with the party that it is likely that his presence could be procured.'"). As plaintiff, it was "likely" that Scott could have procured his own presence. The only evidence in the record regarding Scott's availability came from Dr. Macedo, who testified on the advisability of Scott's continued attendance at trial. Dr. Macedo never discussed whether Scott could testify. Indeed, the record suggests that Scott was deposed for several hours leading up to trial with no apparent concerns. Importantly, Scott himself concedes that he was available to

11

testify when he states on appeal that "[h]ad Plaintiff been aware that the missing witness instruction would be given, he would certainly have testified." (Opening Br. of Appellant at 30.)

Scott argues, however, that he was similarly available to Defendants. He observes that he appeared on Defendants' witness list, and would have been available had he been properly subpoenaed. But this contention ignores the fact that Scott led the court and Defendants to believe that he would in fact testify until well after the deadline for obtaining a timely subpoena. The district court even went so far as to exclaim that "never in my life did I think that the Plaintiff was not going to be testifying in this case." (J.A. 332.) Under these circumstances, it strains credulity to suggest that Scott was equally available to Defendants.

Similarly, it is clear that Scott's testimony would have been material. Scott suggests in his brief that his testimony was not material for two reasons: that he suffered from amnesia and would be unable to recall the accident; and that his testimony would have been merely cumulative because the court heard from other eyewitnesses to the accident. We find neither reason persuasive.

Scott's claim that he suffered from amnesia is belied by even a cursory review of the record. In his deposition (which

12

was only made part of the record by order of the district court), Scott testified at length as to the events leading up to, and including the accident. And during trial, one of Scott's treating physicians opined that Scott had at least "partial recollection" of the accident, and that "[i]f he had amnesia for any period of time, it was extremely short." (J.A. 314.) In other words, there was ample evidence from which the district court could conclude that Scott had sufficient memory that he could testify to at least some of the events that transpired when the accident occurred.

We are similarly not persuaded that Scott's testimony would have been merely cumulative, especially in the context of a trial about whether Scott was contributorily negligent. The district court observed at length the myriad subjects over which Scott, and Scott alone, could testify. These include Scott's training and experience with a motorcycle, Scott's admission (in his deposition) that he stalled the motorcycle a few blocks from the accident, and his familiarity with the intersection. Moreover, only Scott could provide evidence as to the ongoing significance of the injuries to him, thus laying a foundation for damages.

Critical, moreover, to our discussion of materiality is the district court's analysis of the inconsistencies between Scott's

13

deposition testimony and other evidence adduced by Scott throughout the trial.

> For example, [Scott] testified that he did not stop at the intersection and intended to keep moving through the intersection when the accident occurred. Yet, two of [Scott's] eyewitnesses . . . testified that Plaintiff stopped at the intersection before he entered it. Indeed, contrary to [Scott's] testimony during the deposition, the parties stipulated that "prior to the incident, Mr. Scott was stopped at the white cross line, slash, stop bar in the middle lane of West Broad Street." Perhaps this significant inconsistency explains [Scott's] decision not to testify.

(J.A. 624 (internal citations omitted).)

In short, there can be little doubt that Scott was available to testify, and would have provided material testimony. Accordingly, the district court did not err in giving the missing witness instruction, and similarly did not err in denying Scott's motion for a new trial.[7]

---

[7] Scott raises two additional claims of error that we will briefly dispense with. He asserts first that the district court erred by reversing its decision not to give a missing witness instruction. But Scott has not identified how he was prejudiced in any way by the court's change of heart. In the absence of any prejudice, we decline to say that the court committed reversible error.

Scott also claims that the court erred by excluding certain medical evidence. Again, however, Scott cannot demonstrate prejudice. The jury concluded specifically that the Defendants were not negligent. It thus never considered damages—the only issue to which the medical evidence would have been germane.

IV.

For the foregoing reasons, the judgment of the district court is affirmed.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

<u>AFFIRMED</u>